MORGAN & MORGAN COMPLEX
    LITIGATION GROUP
John A. Yanchunis
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: 813/223-5505
813/223-5402 (fax)
jyanchunis@ForThePeople.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE PLUS PROFILE LITIGATION | Case No. 5:18-cv-06164-EJD (VKD) <br><br> DECLARATION OF JOHN A. YANCHUNIS IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

I, John A. Yanchunis, declare pursuant to 28 U.S.C. § 1746 as follows:

1. Following consolidation of two cases before this Court, this Court appointed me as Plaintiffs' Interim Co-Lead Counsel in this matter, along with Ivy T. Ngo, Esquire.

2. Pursuant to the Court's Order Appointing Interim Lead Counsel, my court-appointed responsibilities include the daily management of the case, including the assignment of tasks, handling of offensive discovery (including taking depositions and preparing written discovery), and leading the drafting of all motions and supporting memoranda. (Dkt. No. 44).

3. Attached as **Exhibit 1** to the Motion for Preliminary Approval of Class Action Settlement is the Settlement Agreement entered into in this matter along with each of its exhibits ("Settlement Agreement" or "Settlement").[1]

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release, which is being filed concurrently herewith.

4. The Settlement memorialized in the attached Settlement Agreement is the product of arms-length settlement negotiations following the parties' briefing of the legal bases underpinning this litigation, exchanging informal discovery, and participating in a day-long, arms-length mediation.

5. On October 8, 2018, following Google's announcement of a data leak occurring from 2015 to March 2018 affecting potentially hundreds of thousands of global Google+ users ("First Data Leak"), I filed the first class action case against Google for that First Data Leak, *Matic, et al. v. Google, Inc., et al.*, 5:18-cv-06164 (N.D. Cal. Oct. 8, 2018).

6. On October 17, 2018, Ivy T. Ngo filed the second class action against Google for that First Data Leak, *Olson, et al. v. Google, Inc., et al.*, 5:18-cv-06365 (N.D. Cal. Oct. 17, 2018).

7. On December 5, 2018, following *Olson*'s Administrative Motion to Consider whether Cases Should be Related, this Court ordered the cases related. (Dkt. No. 20).

8. On December 11, 2018, following Google's announcement of a data leak occurring from November 6, 2018 to November 13, 2018, in which Google was attempting to remediate vulnerabilities discovered in the Google+ platform, but instead permitted the personal information tens of millions of users to be disseminated to unauthorized third-party developers ("Second Data Leak"), I filed an amended class action complaint. (Dkt. No. 26).

9. For the purposes of litigation and this Declaration, the First Data Leak and Second Data Leak are collectively referred to as the "Data Leaks."

10. Shortly thereafter on December 19, 2018, I, as well as Ivy T. Ngo, moved for appointment as Interim Class Counsel. (Dkt. No. 27).

11. Following stipulation of all counsel to consolidate the cases—from *Matic*, *Olson*, and Google—this Court ordered *Matic* and *Olson* consolidated, and for Plaintiffs to file a

consolidated complaint, (Dkt. No. 31), which Ivy T. Ngo and I filed on February 6, 2019, (Dkt. No. 34), and which was subsequently amended on March 1, 2019. (Dkt. No. 37).

12. Moreover, in conjunction with their investigation of the Data Leaks, Plaintiffs utilized the services of cybersecurity expert Mary Frantz, and her team at Enterprise Knowledge Partners, to assist with formulating discovery requests, including targeted interrogatories, requests for production, requests for admissions, and initial identification of crucial Google witnesses for deposition.

13. These discovery efforts were developed to provide Plaintiffs with a thorough understanding of the Google+ social media platform, the interaction of Google's Application Program Interfaces ("API"), and the deficiencies within them and Google's information security department that Plaintiffs allege contributed to the Data Leaks.

14. Following briefing of Google's Motion to Dismiss, (Dkt. No. 45), Plaintiffs' Response in Opposition, (Dkt. No. 47), and Google's Reply thereto, (Dkt. No. 49), I, along with my co-lead counsel and Google's counsel, discussed the prospect of an early mediation to determine whether settlement could be reached, preserving economic resources for a potential settlement class, instead of spent on substantial litigation. By agreement of all counsel, including Google's in-house and outside counsel, the parties selected mediator Randall C. Wulff to mediate this matter on August 14, 2019, in California.

15. The mediation was held in Napa, California, on the agreed upon date of August 14, 2019.

16. As a result of the day-long mediation, on August 14, 2019, the parties reached an agreement in principle to resolve this action. The parties agreed to terms forming the substance of the Settlement. Negotiations of attorneys' fees, litigation costs, and expenses did not commence until agreement on behalf of the Settlement Class had been reached.

17. On August 14, 2019, the parties finalized and agreed to a written term sheet containing all material terms of their agreement to settle the case and provide substantial relief to the class.

18. Negotiation of the $7.5 million Settlement Fund was hard fought and at arms' length.

19. I have extensive leadership experience with litigation and discovery efforts in similar data breaches, which are reflected in the attached **Exhibit A**.

20. Due to my extensive experience with litigation and discovery efforts in similar data breaches, I, along with my Interim Co-Lead Counsel, know the strengths and weaknesses of the claims in this matter. We have worked extensively with experts to best understand those claims, as well as to value those claims.

21. I believe the proposed Settlement is extremely beneficial for Settlement Class Members, as it compensates Settlement Class Members for Google's providing third-party application developers access to their Personal Information, and as a result is a fair, adequate, and reasonable settlement of their claims.

22. Based on my knowledge of this case, knowledge gathered from working with the experts in this matter, and my knowledge of claims rates in other data breach cases, I believe the $7.5 million Settlement Fund will be more than ample to accommodate the amounts drawn from it—consisting of disbursements totaling potentially US$12.00 per account holder, notice and administration costs of approximately $265,000 but, in the event it is not, all claims will be reduced on a *pro rata* basis. *See* Settlement Agreement § 2(h). In addition, and subject to Court approval, the settlement amount will also be used to pay for Plaintiffs' attorneys' fees (not to exceed 25%) and litigation costs and expenses (not to exceed $200,000.00).

23. By settling now, the Settlement Class will be able to take advantage of the monetary relief provided herein.

24. Google, having permanently shuttered the Google+ social media platform on April 2, 2019, has sufficiently protected users' Personal Information from any further unauthorized disclosures, and no further business practice changes are required.

25. The Class Representatives have been integral to litigating this matter. All four have been significantly and personally involved in the case, including providing complete digital copies of their Google+ profiles for review, and preparing for intimate and detailed discovery and depositions anticipated if this matter were to proceed.

26. Importantly, each proposed Settlement Class Representative supports the Settlement reached here.

27. I have carefully examined the facts of each of the Settlement Class Representatives to ensure that none of them have any conflicts with the Settlement Class.

28. Plaintiffs have built a very strong liability case, compiling copious evidence concerning Google's numerous public statements, testimony to various governmental and regulatory bodies concerning the Data Leaks, and the failure to give notice of the First Data Leak despite contemporaneous knowledge thereof.

29. While I believe that Plaintiffs had a reasonably good chance of proving that Google's data security was inadequate, I am also cognizant of the risks Plaintiffs faced in further litigation, including at the certification stage.

30. Plaintiffs developed a sound framework for valuing the Data Leaks, supported by expert Ian Ratner. This framework and model are premised upon the concept that information including names, birthdates, hometowns, addresses, locations, interests, relationships, email addresses, and other private information ("Personal Information") should remain private and

exclusively enjoyed by Google+ users. However, as a result of the Data Leaks, Google essentially granted access to users' Personal Information freely, and conveyed value to unauthorized third-party application developers without proper compensation to the rightful owners.

31. Accordingly, that conveyance can be measured through the Income Method (a standard valuation method) by analyzing what third parties pay to access such information, chiefly through marketplaces on the Dark Web. The most comparable Dark Web transactions for the Personal Information exposed in the Data Leaks is access to social media accounts, or what would amount to login credentials and access to Facebook, Twitter, and similar social media accounts, including Google+ when it still existed. That type of access ranged between $0.20 and $29.60, with an average of $2.50.

32. Although an over-inclusive number of consumers are being provided with notice to all identifiable U.S. consumer Google+ users, it is estimated that approximately ten million of those accounts are associated with users that could potentially be eligible to make a claim if they had non-public information in their Google+ profile fields. Therefore, even if each of the approximate top-end-estimated ten million account holders made claims in this case, and the Court granted the full 25% of Plaintiffs' attorney's fees, as well as the $200,000 for litigation costs and expenses, each Settlement Class Member would recover, *pro rata*, more than the minimum value for their Personal Information.

33. Plaintiffs firmly believe in these models and the results they potentially produce here. Nonetheless, each of these theories is untested beyond the motion to dismiss setting, especially in a data breach case of this scope, and unproven before a jury.

34. Thus, while the legal theory behind the largest potential outcomes may be sound, it is untested, and, as a practical matter, Plaintiffs' counsel recognize that taking such large numbers to a jury presents substantial strategic risks. Most significantly, there isn't any evidence that any

class members' Personal Information was taken or misused. In any event and to guide me in the litigation, I retained a well-regarded expert to assist in the calculation of damages in the event that we had been able to establish that class members' Personal Information was taken. Based upon the calculation of the value of this Personal Information, as well as the range of the information that class members maintained in their accounts, and further based upon my assessment of the risks of litigation over three decades in the courtroom, I felt well-armed with information to engage in mediation and negotiate the Settlement achieved in this case. Certainly, compromise was required here, but the relief provided by this Settlement does address the types of damages that I have seen in my experience litigating privacy rights since 1999.

35. Accordingly, Plaintiffs seek the appointment of:

    a. Lead Settlement Class Counsel: John Yanchunis of Morgan & Morgan Complex Litigation Group, and Ivy T. Ngo of Franklin D. Azar & Associates; and

    b. Executive Settlement Class Counsel: Ryan J. McGee and Jonathan B. Cohen of Morgan & Morgan Complex Litigation Group, and Clayeo C. Arnold and Joshua H. Watson of Clayeo C. Arnold Professional Law Corporation,

Collectively, "Class Counsel." Firm Resumes for Morgan & Morgan Complex Litigation Group, and Franklin D. Azar & Associates, were previously filed with this Court. (Dkt. Nos. 27-2, 27-3).

36. The motion for an award of attorneys' fees, litigation costs, and expenses will be supported with detailed lodestar information and an accounting of expenses. As directed by the Court, I, along with Ivy T. Ngo, have implemented efficiency protocols and ensured that work performed in this matter was unnecessarily non-duplicative and contemporaneously recorded.

37. Having worked on behalf of the putative class since the Data Leaks were first announced—when the potential class was hundreds of thousands of global users, and well before that number eclipsed tens of millions of global users, of which U.S.-based users subject to this

Settlement are estimated to account for under ten million—and having dedicated time and financial resources to the case, proposed Class Counsel endorse the Settlement without reservation. I wholeheartedly endorse the resolution reached here on behalf of the Settlement Class, and believe it to be the best, most fulsome resolution of a data breach to date wherein the information was not accessed by hackers or malicious third parties, but was instead provided to unauthorized third-party developers, and an excellent outcome within the context of the facts here, specifically.

38. The parties solicited confidential bids from companies to provide notice and administration services in conjunction with the proposed settlement. These companies were provided the material terms of the settlement and asked to formulate a notice and media plan that would provide the best notice practical to reach the Settlement Class.

39. The parties ultimately chose Angeion Group ("Angeion"). My experience with Angeion includes a number of class action settlements, including *Preman v. Pollo Operations, Inc.*, No. 6:16-cv-443-ORL-41-GJK (M.D. Fla. 2017); *Black-Brown v. Terminix Int'l. Co. Ltd. Partnership*, No. 1:16-cv-23607-AOR (S.D. Fla. 2017); *Zyburo v. NCSPlus, Inc.*, 1:12-cv-06677-JSR (S.D. Fla. 2015). It is my belief that Angeion's proposed notice and administration plan will allow for the effective dissemination of notice to the Settlement Class, efficient administration of Class claims, and will do so in an economical matter.

40. I have reviewed the proposed Notice of Class Action Settlement and Claim Form (the "Notices"). The Notices clearly explain the background of the case, the terms of the settlement, the process and deadlines for filing claims, the deadlines for objecting or opting out and how to do so, and how to obtain additional information. Thus, the Notices provide all the information necessary for Settlement Class Members to make informed decisions with respect to whether they remain in or opt-out of the Settlement Class, or object to the proposed Settlement. I have also

reviewed the claims form, which was drafted with the goal of ensuring that it could be easily read and understood by class members.

42. I have also reviewed the Notice Plan and believe it will be effective in meeting and exceeding the requirements of Due Process for notifying Settlement Class Members. The Notice Plan was developed by Angeion, a provider with significant experience in designing notice plans in large and national class actions similar to this one. I am familiar with Angeion and believe Mr. Steven Weisbrot to be one of the best, most knowledge, class notice professionals in the world.

42. Angeion has reviewed the proposed Notices and offered Mr. Weisbrot's input as to tailoring them to clearly and effectively notify the Settlement Class Members of their rights under the Settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed January 6, 2020 in Tampa, Florida.

By: /s/ *John A. Yanchunis*
John A. Yanchunis

# Exhibit A

**Recent Data Breach and Privacy Cases in which Mr. Yanchunis Has Served in Leadership Positions**

| Case | Position | Description | Status |
|---|---|---|---|
| *In re: Equifax, Inc. Customer Data Security Breach Litigation*, No. 17-md-02800 (N.D. GA) Consumer Action | Steering Comm. – John Yanchunis | Litigation brought on behalf of consumers data breach announced by Equifax in Sept. 2017 exposing the names, Social Security numbers, birth dates, addresses, driver's license numbers, taxpayer ID cards and additional information of more than 147 million U.S. residents | Final Approval Hearing set for December 19, 2019 |
| *Jasper Schmidt et al. v. Facebook, Inc.*, No. C 18-05982 WHA (JSC) (N.D. Cal.) | Interim Co-Class Counsel – John Yanchunis | Litigation arising from data breach compromising personal information of approximately 30 million Facebook users, including name, contact details, user names, gender, locale/language, relationship status, religion, hometown, current city, birthdate, device types used to access Facebook, education and work history | Contested injunction class certified on November 26, 2019. |
| *In re: Yahoo! Inc. Customer Data Security Breach Litigation*, No. 16-md-02752 (N.D. CA) | Lead Counsel – John Yanchunis | Litigation following multiple data breaches involving Yahoo's 3 billion user accounts, compromising names, email addresses, telephone numbers, security questions and answers, dates of birth, passwords, and web cookies | Final Approval Hearing seeking approval of $117,500,000.00 common fund settlement set for April 2, 2020 |
| *In re: Home Depot Customer Data Security Breach Litigation*, No. 14-md-02583 (N.D. GA) Consumer Action | Co-Lead – John Yanchunis | Litigation brought on behalf of consumers related to a data breach compromising credit and debit card information of more than 60 million Home Depot customers | Final judgment entered approving a settlement on behalf of a class of 40 million consumers with total value of $29,025,000 |
| *In re: Target Corp. Customer Data Security Breach Litigation*, No. 14-md-2522 (D. MN) Consumer Action | Steering Comm. – John Yanchunis | Litigation brought on behalf of consumers related to a data breach compromising credit and debit card information of millions of Target customers | Final Judgment approving a settlement on behalf of a class of approximately 100 million consumers upheld by the 8th Circuit |

| Case | Position | Description | Status |
|------|----------|-------------|--------|
| *In re: U.S. Office of Personnel Management Data Security Breach Litigation*, No. 15-mc-01394-ABJ (D.D.C.) | Steering Comm. – John Yanchunis | Litigation arising from data breach exposing personal information of up to 21.5 million current, former and prospective government employees and contractors | Dismissal on standing grounds recently reversed on appeal by the D.C. Circuit |
| *Scott et al. v. LifeBridge Health, Inc.* No. 24Cl8006801 (Cir. Ct. Baltimore City) | Co-Lead – John Yanchunis | Litigation brought on behalf of approximately 500,000 patients who had their names, addresses, dates of birth, diagnoses, medications, clinical and treatment information, insurance information, and Social Security numbers exposed in a 2016 data breach | Motion to Dismiss pending; discovery underway |
| *Morrow v. Quest Diagnostics, Inc.*, No. 2:17-cv-0948 (D. N.J.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of patients who had medical testing results – including containing their names, addresses, and treatment information – exposed in data breach | Preliminary Approval granted Oct. 25, 2019. Final Approval hearing set for Feb. 25, 2020 |
| *Abdelmessih v. Five Below, Inc.*, No. 2:19-cv-01487 (E.D. Pa.); | Lead Counsel – John Yanchunis | Litigation brought on behalf of consumers related to breach involving customers' payment card data. | Motion to Dismiss stayed pending mediation |
| *Nelson v. Roadrunner Transportation Systems, Inc.*, No. 1:18-cv-07400 (N.D. Ill.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of employees after exposure of personal information via payroll system | Discovery stayed pending mediation |
| *Hameed-Bolden v. Forever 21 Retail, Inc. et al.*, No. 2:18-cv-03019 (C.D. Cal.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of consumers related to breach involving customers' payment card data. | Motion for Preliminary Approval granted in part and denied in part August 12, 2019; Case currently stayed pending Defendant's bankruptcy proceedings |
| *Hymes v. Earl Enterprises Holdings, Inc.*, No. 6:19-cv-00644 (M.D. Fla.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of consumers related to breach involving customers' payment card data. | Motion to Dismiss pending |
| *Kuss v. American Homepatient, Inc.*, No. 8:18-cv-02348 (M.D. Fla.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of patients who had medical information exposed as a result of computer theft. | Motion for Preliminary Approval filed Nov. 8, 2019 |

| Case | Position | Description | Status |
|---|---|---|---|
| *Fulton-Green v. Accolade, Inc.*, 2:18-cv-00274-GEKP (E.D. Pa.) | Co-Lead Counsel – John Yanchunis | Litigation brought on behalf of employees after phishing scam resulted in theft of employee W-2 data | Final Approval of class settlement entered Sept. 24, 2019 |
| *Walters v. Kimpton Hotel & Restaurant*, No. 3:16-cv-05387 (N.D. Cal.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of consumers related to breach involving customers' payment card data. | Final Approval of class settlement entered July 11, 2019 |
| *Ortiz v. UCLA Health System*, No. BC589327 (Cal. Sup. Ct. Los Angeles Cnty.) | Executive Committee – John Yanchunis | Litigation brought on behalf of patients whose personal information was exposed in data breach | Final Approval of class settlement entered June 28, 2019 |
| *In Re: Arby's Restaurant Group, Inc. Data Security Litigation*, No. 1:17-cv-1035 (N.D. GA) Consumer Action | Co-Liaison– John Yanchunis | Litigation brought on behalf of consumers related to a data breach compromising credit and debit card information from patrons in approximately 1,000 Arby's corporate locations at the point of sale | Final Approval of class settlement entered June 6, 2019 |
| *Foreman v. Solera Holdings, Inc.*, No. 6:17-cv-02002 (M.D. Fla.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of employees after phishing scam resulted in theft of employee W-2 data | Final Approval of class settlement entered April 10, 2019 |
| *Torres et al. v. Wendy's International LLC*, No. 16-cv-210-PGB-DCI (M.D. Fla.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of consumers related to data breach of Wendy's computer system and point of service terminals at over 1,000 Wendy's locations which resulted in the theft of customers' credit and debit card data | Final approval of class settlement entered February 26, 2019 |
| *Albert v. School Board of Manatee County, Florida*, No. 17-CA-004113, (Fla. 12th. Cir. Ct.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of employees after phishing scam resulted in theft of employee W-2 data | Final Approval of class settlement entered Nov. 19, 2018 |
| *Brady v. Scotty's Holdings, LLC*, 1:17-cv-01313 (S.D. Ind.) | Co-Lead Counsel – John Yanchunis | Litigation brought on behalf of employees after phishing scam resulted in theft of employee W-2 data | Final Approval of class settlement entered October 16, 2018 |
| *Linnins v. TIMCO Aviation Services, Inc.*, 16-cv-486 (M.D.N.C.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of employees after phishing scam resulted in theft of employee W-2 data | Final Approval of class settlement entered June 1, 2018 |

| Case | Position | Description | Status |
|---|---|---|---|
| *Bishop v. Shorter University*, No. 4:15-cv-00033-HLM (N.D. Ga) | Co-Lead Counsel – John Yanchunis | Litigation brought on behalf of students who had personally identifying information and financial exposed as a result of document theft. | Final Approval of class settlement entered Oct. 17, 2017 |
| *Ramirez v. ChenMed, LLC*, No. 14-12319-CA-04 (Fla. 11th Cir. Ct.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of patients whose personal information was exposed in data breach | Final Approval of class settlement entered Feb. 2, 2016 |
| *Carsten v. Univ. of Miami*, No. 1:14-cv-20497-KMW (S.D. Fla.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of patients whose personal information was exposed in data breach | Final Approval of class settlement entered Dec. 17, 2014 |
| *Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800 (S.D. Fla.) | Lead Counsel – John Yanchunis | Litigation brought on behalf of employees after employer's vendor failed to protect personal information of employees | Final Approval of class settlement entered Oct. 7, 2013 |
| *Fresco v. R.L. Polk,* No. 07-cv-60695-JEM (S.D. Fla.) | Co-Lead Counsel – John Yanchunis | Privacy class action cases involving the protection of privacy rights under the Driver's Protection Privacy Act (DPPA) | Final Approval of class settlement entered July 28, 2010 |
| *Fresco v. Automotive Directions, Inc.*, No. 0:03-cv-61063-JEM (S.D. Fla.) | Co-Lead Counsel – John Yanchunis | Privacy class action cases involving the protection of privacy rights under the Driver's Protection Privacy Act (DPPA) | Final Approval of class settlement entered Jan. 20, 2009 |
| *Davis v. Bank of America*, No. 05-cv-80806 (S.D. Fla.) | Co-Lead Counsel – John Yanchunis | Privacy class action cases involving the protection of privacy rights under the Driver's Protection Privacy Act (DPPA) | Final Approval of $10 million class settlement entered June 21, 2006 |
| *Kehoe v. Fidelity Fed. Bank and Trust*, No. 03-cv-80593 (S.D. Fla.) | Co-Lead Counsel – John Yanchunis | Privacy class action cases involving the protection of privacy rights under the Driver's Protection Privacy Act (DPPA) | Final Approval of $50 million class settlement entered Dec. 13, 2006 |