```
 1                    UNITED STATES DISTRICT COURT
 2               FOR THE NORTHERN DISTRICT OF CALIFORNIA
                          SAN JOSE DIVISION
 3

 4

 5    IN RE GOOGLE PLUS PROFILE        CASE NO.  CV-18-06164-EJD
      LITIGATION
 6                                     SAN JOSE, CALIFORNIA

 7                                     MAY 21, 2020

 8                                     PAGES 1 - 26

 9

10                 TRANSCRIPT OF ZOOM PROCEEDINGS
              BEFORE THE HONORABLE EDWARD J. DAVILA
11                 UNITED STATES DISTRICT JUDGE

12

     A-P-P-E-A-R-A-N-C-E-S BY ZOOM:
13

14    FOR THE PLAINTIFFS:     MORGAN & MORGAN COMPLEX
                              LITIGATION GROUP
15                            BY:  JOHN YACHUNIS
                                   RYAN MCGEE
16                                 FRANKLIN AZAR
                              201 N. FRANKLIN STREET, 7TH FLOOR
17                            TAMPA, FLORIDA 33602

18
      FOR THE DEFENDANTS:     WILSON, SONSINI, GOODRICH & ROSATI
19                            BY:  MAURA L. REES
                              650 PAGE MILL ROAD
20                            PALO ALTO, CA 94304-1050

21
      OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, RMR, CRR
22                                CERTIFICATE NUMBER 8074

23

         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
24    TRANSCRIPT PRODUCED WITH COMPUTER.

25
```

|  |  |  |
|---|---|---|
| 09:37AM | 1 | SAN JOSE, CALIFORNIA                              MAY 21, 2020 |
| 09:37AM | 2 | P R O C E E D I N G S |
| 09:57AM | 3 | (COURT CONVENED AT 9:57 A.M.) |
| 09:57AM | 4 | THE COURT:  LET'S CALL 18-6164, THIS IS |
| 09:58AM | 5 | IN RE HP GOOGLE PLUS LITIGATION. |
| 09:58AM | 6 | MS. KRATZMANN, I THINK YOU CHECKED EVERYONE IN, BUT WHY |
| 09:58AM | 7 | DON'T I -- I THINK YOU CHECKED EVERYONE IN, BUT WHY DON'T I |
| 09:58AM | 8 | CAPTURE APPEARANCES AGAIN FOR THE RECORD. |
| 09:58AM | 9 | IF I COULD HAVE THE PLAINTIFF STATE YOUR APPEARANCES, |
| 09:58AM | 10 | PLEASE. |
| 09:58AM | 11 | MR. YACHUNIS:  GOOD MORNING, YOUR HONOR. |
| 09:58AM | 12 | MY NAME IS JOHN YACHUNIS.  I'M HERE WITH RYAN MCGEE WHO IS |
| 09:58AM | 13 | TO MY LEFT BUT OFF CAMERA, WHO WILL BE ASSISTING ME IN THE |
| 09:58AM | 14 | PRESENTATION, AND ALSO I BELIEVE FRANKLIN AZAR, MY COCOUNSEL, |
| 09:58AM | 15 | APPEARING FROM COLORADO.  HE IS ALSO MAKING AN APPEARANCE. |
| 09:58AM | 16 | THE COURT:  MR. AZAR, I SEE YOU.  WOULD YOU LIKE TO |
| 09:58AM | 17 | STATE YOUR APPEARANCE? |
| 09:58AM | 18 | MR. AZAR:  THANK YOU, YOUR HONOR. |
| 09:58AM | 19 | FRANKLIN AZAR FOR THE PLAINTIFFS. |
| 09:58AM | 20 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 09:58AM | 21 | WHO APPEARS FOR THE DEFENDANTS IN THIS MATTER? |
| 09:58AM | 22 | MS. REES:  YOUR HONOR, THIS IS MAURA REES FROM |
| 09:58AM | 23 | WILSON SONSINI ON BEHALF OF DEFENDANT GOOGLE. |
| 09:58AM | 24 | THE COURT:  THANK YOU.  GOOD MORNING. |
| 09:58AM | 25 | I'M GOING TO ASK YOU TO TURN YOUR VOLUME UP IF YOU WOULD, |

09:58AM   1       PLEASE, OR ADJUST YOUR MICROPHONE IF YOU WOULD.

09:58AM   2           GOOD MORNING.  IT'S NICE TO SEE EVERYONE.  WE ARE

09:58AM   3       PROCEEDING BY WAY OF A ZOOM VIDEOCONFERENCE.  THE COVID CRISIS

09:59AM   4       HAS SHUTTERED OUR FACILITY HERE IN SAN JOSE AND OTHERS IN THE

09:59AM   5       NORTHERN DISTRICT, AND WE HAVE ENGAGED AND CONTINUED THE

09:59AM   6       COURT'S BUSINESS VIA TELECOMMUNICATIONS AS WELL AS VIDEO

09:59AM   7       COMMUNICATIONS.

09:59AM   8           SO I APPRECIATE -- AND THANK YOU, COUNSEL, FOR AGREEING TO

09:59AM   9       PARTICIPATE IN THIS FASHION.

09:59AM   10          WHAT WE HAVE ON THIS MORNING IS PLAINTIFFS' MOTION TO

09:59AM   11      APPROVE A MOTION FOR APPROVAL PRELIMINARILY OF THIS CLASS

09:59AM   12      ACTION SETTLEMENT.

09:59AM   13          SO LET ME TURN TO PLAINTIFFS, AND I'LL GIVE YOU AN

09:59AM   14      OPPORTUNITY TO ADVISE THE COURT AS TO WHY YOU BELIEVE THE COURT

09:59AM   15      SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

09:59AM   16          AND LET ME INDICATE THAT I HAVE READ YOUR DOCUMENTS HERE,

09:59AM   17      DOCUMENT 57 AND OTHERS, THAT ATTEST TO THE SETTLEMENT AND THE

09:59AM   18      REASONS FOR IT.

09:59AM   19          SO LET ME LET COUNSEL PROCEED THEN, PLAINTIFFS' COUNSEL.

09:59AM   20          MR. YACHUNIS, ARE YOU GOING TO TAKE THAT LABOR?

09:59AM   21              MR. YACHUNIS:  I AM, YOUR HONOR.  THANK YOU SO MUCH.

10:00AM   22          I STARTED LITIGATING PRIVACY LITIGATION IN 1999 AND OVER

10:00AM   23      THE COURSE OF MY TIME LITIGATING PRIVACY, AND PARTICULARLY

10:00AM   24      PRIVACY CLASS LITIGATION, I'VE SEEN A MIGRATION IN TERMS OF THE

10:00AM   25      TYPES OF CLAIMS THAT HAVE ARISEN, AND IT IS IN LARGE PART BASED

10:00AM 1    UPON THE WAY INFORMATION HAS NOW BECOME WHAT I WOULD DESCRIBE

10:00AM 2    SOMETIMES AS THE NEW OIL.  IT HAS BECOME, YOU KNOW, VALUABLE BY

10:00AM 3    COMPANIES, AND CERTAINLY THE LARGEST COMPANIES ON THE FACE OF

10:00AM 4    THE EARTH COLLECT INFORMATION AND USE IT FOR VARIOUS PURPOSES.

10:00AM 5         AND IN THIS CASE WE'RE DEALING WITH A SOCIAL MEDIA BRAND

10:00AM 6    OF GOOGLE THAT NO LONGER EXISTS, AND IT WAS TERMINATED SHORTLY

10:00AM 7    AFTER THE ISSUES HERE.

10:00AM 8         WHAT WE HAVE IS IT'S DIFFICULT TO DESCRIBE THIS AS A DATA

10:00AM 9    BREACH BECAUSE WE DON'T HAVE A MALICIOUS HACKER WHO GAINED

10:01AM 10   ENTRY INTO THE INFORMATION SECURITIES SYSTEM, THAT GAINED

10:01AM 11   ACCESS TO APPROXIMATELY 53 MILLION ACCOUNTS OF CONSUMERS

10:01AM 12   WORLDWIDE, AND AGAIN, WE'RE FOCUSSING IN ON ONLY A CLASS

10:01AM 13   DEALING WITH U.S. USERS, U.S. CONSUMERS, PUSHING ASIDE ANYBODY

10:01AM 14   IN THE WORLD BECAUSE OF VARIOUS JURISDICTIONAL ISSUES THAT THE

10:01AM 15   COURT IS WELL AWARE OF.

10:01AM 16        AND WHAT HAPPENED HERE, AS THE COURT SAW FROM THE PAPERS,

10:01AM 17   IS THIRD PARTY APPLICATORS WHO HAD BEEN APPROVED BY GOOGLE TO

10:01AM 18   HAVE ACCESS TO CERTAIN INFORMATION IN THESE ACCOUNTS, THESE

10:01AM 19   ACCOUNTS WERE EXPOSED REGARDLESS OF THEIR PRIVACY SETTINGS THAT

10:01AM 20   INDIVIDUAL CONSUMERS PLACED ON THEIR SOCIAL MEDIA.

10:01AM 21        AND AS YOU KNOW, AND I DON'T KNOW IF THE COURT USES SOCIAL

10:01AM 22   MEDIA, BUT TYPICALLY YOU ARE ALLOWED TO HAVE SETTINGS THAT

10:02AM 23   INDICATE WHO IT IS YOU WANT TO SEE YOUR INFORMATION.

10:02AM 24        OF COURSE IT RANGES FROM NAME AND ADDRESS AND OF COURSE

10:02AM 25   YOUR GMAIL ACCOUNT, BECAUSE EVERYBODY HAS A GMAIL MAIL ADDRESS,

10:02AM 1    TO THINGS THAT ARE PERHAPS MORE SENSITIVE THAT WE CERTAINLY

10:02AM 2    HAVE LAID OUT FOR THE FOUR CLIENTS FROM CALIFORNIA, FLORIDA,

10:02AM 3    AND THE TWO FROM COLORADO.

10:02AM 4        SO WHAT HAPPENED AGAIN WAS THIS INFORMATION WAS AVAILABLE

10:02AM 5    OR EXPOSED AND, YOU KNOW, IT WAS NOT TO MALICIOUS HACKERS, BUT

10:02AM 6    AGAIN, PEOPLE WHO HAD PREVIOUSLY BEEN APPROVED BY GOOGLE TO

10:02AM 7    HAVE ACCESS TO CERTAIN INFORMATION IF CONSUMERS ALLOWED IT.

10:02AM 8        SO IT'S DIFFERENT FROM, FOR INSTANCE, THE EQUIFAX CASE

10:02AM 9    WHERE WE HAD NAMES AND ADDRESSES AND SOCIAL SECURITY NUMBERS,

10:02AM 10   OR OPM WHICH THE COURT IS WELL FAMILIAR SINCE YOU'RE A MEMBER

10:02AM 11   OF THAT PUTATIVE CLASS WHERE YOUR APPLICATION AT THE TIME OF

10:02AM 12   BECOMING A FEDERAL JUDGE AND ALL OF THE INFORMATION EXPOSED OR

10:03AM 13   LAID OUT WAS TAKEN BY, IF YOU BELIEVE ATTORNEY GENERAL BARR,

10:03AM 14   CHINESE HACKERS, BUT IN ANY EVENT THAT CASE IS PENDING BEFORE

10:03AM 15   JUDGE JACKSON IN D.C., AND I HAPPEN TO HAVE THE PLEASURE OF

10:03AM 16   BEING ON THE LEADERSHIP COMMITTEE LEADING THAT EFFORT.

10:03AM 17       SO WHEN WE HAD THIS CASE, WE'RE DEALING WITH PEOPLE WHOSE

10:03AM 18   INFORMATION WAS EXPOSED, NOT NECESSARILY WHAT WE'LL CALL IS

10:03AM 19   EXFILTRATED, MEANING TAKEN, AND THEN MISUSED.  WE CERTAINLY

10:03AM 20   DON'T HAVE EVIDENCE OF MISUSE.  WE HAVE EVIDENCE OF PEOPLE

10:03AM 21   TAKING ACTION TO PROTECT THEMSELVES.  FOR INSTANCE, ONE OF OUR

10:03AM 22   CLIENTS -- ALL OF OUR CLIENTS ARE NOW HAVING TO MONITOR THEIR

10:03AM 23   ACCOUNTS, BUT ONE IN PARTICULAR WENT OUT AND PURCHASED A

10:03AM 24   FIREWALL AS WELL AS ADDITIONAL SECURITY TO PROTECT THE

10:03AM 25   INFORMATION IN HIS GMAIL ACCOUNT AND HIS COMPUTER.

10:04AM 1      SO DEALING WITH THAT KIND OF UNIQUE CIRCUMSTANCE IN THE

10:04AM 2  CASE THAT, FOR ME, WITH A FULL RANGE OF OTHER TYPES OF

10:04AM 3  LITIGATION WAS UNIQUE.  WE ENTERED INTO MEDIATION ON AUGUST

10:04AM 4  14TH USING RANDY WULFF, WHO HAS HAD EXPERIENCE MEDIATING

10:04AM 5  PRIVACY CASES, AND OVER THE COURSE OF THE DAY REACHED A

10:04AM 6  SETTLEMENT.

10:04AM 7      BUT ONE OF THE THINGS I MENTIONED, APPROXIMATELY 53

10:04AM 8  MILLION ACCOUNTS, I'M NOT REFERRING TO INDIVIDUALS, I'M

10:04AM 9  REFERRING TO ACCOUNTS.  SO IT IS POSSIBLE THAT SOMEBODY HAS

10:04AM 10  MORE THAN ONE ACCOUNT, AND THAT'S TRUE BOTH IN THE GOOGLE PLUS

10:04AM 11  AS WELL AS FACEBOOK.

10:04AM 12      ONE OF THE THINGS THAT WE DID NOT SEEK IN THIS CASE WAS

10:04AM 13  INJUNCTIVE RELIEF BECAUSE SHORTLY AFTER THE SECOND

10:04AM 14  DETERMINATION THAT THERE WAS EXPOSURE OF THIS INFORMATION THAT

10:04AM 15  GOOGLE DECIDED TO SHUT DOWN GOOGLE PLUS, SO THAT PLATFORM, THAT

10:04AM 16  SOCIAL MEDIA PLATFORM NO LONGER EXISTS, SO INJUNCTIVE RELIEF

10:05AM 17  WAS NOT THE FOCUS.

10:05AM 18      IN CONNECTION WITH TRYING TO ASCERTAIN AND PUT OUR HANDS

10:05AM 19  ON EXACTLY WHAT HAPPENED, WE RETAINED SEVERAL EXPERTS.  ONE

10:05AM 20  MARY FRANCE HAS BEEN AN EXPERT IN ANY NUMBER OF LARGE CASES,

10:05AM 21  INCLUDING YAHOO, AND OF COURSE MOST RECENTLY EQUIFAX.  SHE WAS

10:05AM 22  THE EXPERT IN THE MGM BREACH AND ALSO IN THE CAPITAL 1 BREACH

10:05AM 23  WHICH AFFECTED APPROXIMATELY 94 MILLION.

10:05AM 24      WE ALSO RETAINED AN EXPERT WHO HAS BEEN A DAMAGE MODEL FOR

10:05AM 25  US IN A NUMBER OF CASES, YAHOO, MOST RECENTLY EQUIFAX,

10:05AM 1    CAPITAL 1, THE VERY SAME CASES THAT MARY FRANCE WHO CAME UP

10:05AM 2    WITH A DAMAGE MODEL OF -- USING INFORMATION ON THE DARK WEB,

10:05AM 3    WHAT THIS INFORMATION WAS WORTH IN TERMS OF ACCESS TO SOCIAL

10:05AM 4    MEDIA, AND AS THE COURT SAW, WE PLACED A RANGE OF APPROXIMATELY

10:06AM 5    $0.20 TO $29.

10:06AM 6        WHY THE DIFFERENCE IS BECAUSE WHAT MIGHT BE AVAILABLE IN A

10:06AM 7    SOCIAL MEDIA WILL DICTATE WHAT A PERSON, A MALICIOUS HACKER

10:06AM 8    MIGHT PAY ON THE DARK WEB.

10:06AM 9        NOW, AGAIN, WE DON'T HAVE A CASE IN WHICH INFORMATION WAS

10:06AM 10   EXPOSED TO MALICIOUS HACKERS BUT PEOPLE WHO OTHERWISE HAD

10:06AM 11   ACCESS, BUT STILL AS A PRIVACY ADVOCATE, WE HAD A BELIEF THAT

10:06AM 12   PEOPLE SHOULD BE COMPENSATED, AND THAT'S WHY WE REACHED A

10:06AM 13   SETTLEMENT IN THE AMOUNT OF 7.5 MILLION, A NONREVERSIONARY

10:06AM 14   SETTLEMENT WHICH WOULD PROVIDE PEOPLE THE ABILITY IN A SIMPLE

10:06AM 15   CLAIM PROCESS TO GAIN A SUM OF MONEY WHICH WE FELT WAS IN

10:06AM 16   EXCESS OF THE AVERAGE.

10:06AM 17       AND IF THE COURT SAW IN MY DECLARATION, IAN RATNER, A

10:06AM 18   VALUED CREDENTIALS TO GET INTO SOCIAL MEDIA FROM $0.20 TO $29

10:06AM 19   WITH AN AVERAGE, NOT A MEAN, BUT AN AVERAGE OF $2.50.  SO

10:07AM 20   THROUGH THIS CLAIM PROCESS PEOPLE HAVE THE ABILITY OF GETTING

10:07AM 21   $5, AND DEPENDING UPON HOW MUCH MONEY IS AVAILABLE BASED UPON

10:07AM 22   THE CLAIM RATE, WHICH WE ANTICIPATE BASED UPON OTHER

10:07AM 23   SETTLEMENTS, NOT OF THIS TYPE BUT OF THE DATA BREACH TYPE, WE

10:07AM 24   ESTIMATE THERE WILL BE A CLAIM FROM BETWEEN 3 TO 5 PERCENT.

10:07AM 25       AND IN ANY EVENT, THERE IS EXCESS MONEY.  PEOPLE HAVE THE

10:07AM 1    ABILITY OF GETTING A SECOND TRANCHE UP TO THE AMOUNT OF $12.

10:07AM 2        THE SETTLEMENT ALSO IS AN ALL IN AND OTHERWISE IT PAYS FOR

10:07AM 3    NOTICE AND CLAIMS ADMINISTRATORS.

10:07AM 4        WE TOOK AND OBTAINED BIDS OF SIX VERY DETAILED -- I HAPPEN

10:07AM 5    TO HAVE EXPERIENCE WITH ALL OF THEM BECAUSE MY PRACTICE FOR THE

10:07AM 6    LAST TWO AND A HALF DECADES JUST FOCUSSED ON CLASS LITIGATION,

10:07AM 7    AND WE SELECTED ANGEION.  IN MY DECLARATION I GAVE THE COURT MY

10:07AM 8    PREVIOUS EXPERIENCE IN THE LAST TWO YEARS WITH ANGEION, AND

10:08AM 9    ANGEION CAME IN THE CHEAPEST, BUT BY NO MEANS ARE THEY CHEAP IN

10:08AM 10   THE SENSE OF THE QUALITY OF DELIVERY THAT THEY ARE ABLE TO

10:08AM 11   PROVIDE.

10:08AM 12       AND PRESENTLY I'VE GOT OTHER BIDS OUT TO THEM FOR

10:08AM 13   CONSIDERATION OF OTHER CASES OF THE DATA BREACH TYPE WHERE

10:08AM 14   INFORMATION WAS, IN FACT, TAKEN BY A MALICIOUS HACKER.

10:08AM 15       SO WE WERE COST EFFICIENT IN MAKING CERTAIN THAT THE MONEY

10:08AM 16   AVAILABLE TO PAY CLAIMS OF THE CLASS WERE SPENT WISELY, AND

10:08AM 17   THAT'S WHY WE SELECTED ANGEION FOR BOTH PURPOSES OF COST

10:08AM 18   EFFECTIVENESS AS WELL AS THE QUALITY OF THE DELIVERY OF THE

10:08AM 19   NOTICE AND THE CLAIMS PROCESS.

10:08AM 20       I MENTIONED THE CLAIM PROCESS.  IT'S A VERY EASY ONE.  YOU

10:08AM 21   MERELY HAVE TO, YOU KNOW, FILL OUT THE CLAIM FORM AND INDICATE

10:08AM 22   THAT YOU HAD SENSITIVE INFORMATION IN THE GOOGLE PLUS ACCOUNT,

10:08AM 23   AND YOU'LL GET BETWEEN $5 AND DEPENDING UPON THE AVAILABILITY

10:09AM 24   OF MONEY, AS I MENTIONED, UP TO $12.

10:09AM 25       IF THERE ARE SUMS LEFT OVER AFTER THE PAYMENT OF CLAIMS OF

10:09AM  1    CLASS MEMBERS, THEN WE WOULD ASK AN INDEPENDENT NEUTRAL, NOT

10:09AM  2    THAT THE PARTIES HAVE ANY SAY IN THIS, AND INDICATE WHO SHOULD

10:09AM  3    SAY WHO SHOULD THE CY PRES RECIPIENT IS SUBJECT TO THE COURT'S

10:09AM  4    APPROVAL.

10:09AM  5         ONE OF THE THINGS THAT OBVIOUSLY IS OF CONCERN AND IT IS

10:09AM  6    CERTAINLY ONE OF THE FACTORS IN THE NORTHERN DISTRICT OF

10:09AM  7    CALIFORNIA IS MY ASSESSMENT OF THE RISK OF TAKING THIS CASE TO

10:09AM  8    TRIAL.  I BELIEVE WE COULD GET PAST STANDING, BUT THE ISSUE OF

10:09AM  9    CERTIFICATION IS A SIGNIFICANT ONE.

10:09AM  10        AND JUST RECENTLY BEFORE JUDGE ALSUP I HAD THE PLEASURE OF

10:09AM  11   ARGUING A MOTION FOR CLASS CERTIFICATION.  WE WERE ABLE TO

10:09AM  12   SUCCEED IN CERTIFYING A (B)(2) CLASS FOR INJUNCTIVE RELIEF, BUT

10:10AM  13   WE FAILED IN CONNECTION WITH OUR ABILITY TO CONVINCE

10:10AM  14   JUDGE ALSUP TO CERTIFY A DAMAGE CLASS, AND THERE IS PENDING

10:10AM  15   BEFORE JUDGE ALSUP A MOTION FOR A PRELIMINARY APPROVAL OF OUR

10:10AM  16   INJUNCTIVE RELIEF CLASS FOR U.S. CITIZENS.

10:10AM  17        THERE HAS BEEN ONLY ONE CONSUMER CLASS CASE CERTIFIED FOR

10:10AM  18   DAMAGES.  IT WAS A HOSPITAL BREACH IN ALABAMA.  JIM BOTERO, WHO

10:10AM  19   WAS THE LEAD LAWYER IN THAT CASE, WAS ABLE TO CERTIFY A (B)(3)

10:10AM  20   CLASS FOR CONSUMERS.

10:10AM  21        THE OTHER ONE THAT HAS BEEN CERTIFIED BUT FOR FINANCIAL

10:10AM  22   INSTITUTIONS IS JUDGE MADISON'S DECISION IN TARGET, BUT OF

10:10AM  23   COURSE THAT'S NOT CONSUMERS, THOSE WERE FINANCIAL INSTITUTIONS

10:10AM  24   THAT HAD TO INCUR COSTS TO REPLACE PAYMENT CARDS THAT WERE

10:10AM  25   TAKEN IN THAT BREACH.

| | |
|---|---|
| 10:10AM | 1 |
| 10:10AM | 2 |
| 10:10AM | 3 |
| 10:11AM | 4 |
| 10:11AM | 5 |

SO WE HAVE VERY FEW PRECEDENT IN CONNECTION WITH
CERTIFICATION.  I WOULDN'T HAVE UNDERTAKEN THE CASE IF I WERE
NOT CONVINCED THAT I WOULD MAKE YEOMAN'S EFFORT TO GET
CERTIFIED, BUT AGAIN, YOU NEVER KNOW WHAT THE COURT MIGHT HAVE
DONE WITH A CONTESTED CERT MOTION.  AND THEN WE HAVE THE
APPELLATE COURT, BOTH THE NINTH AND THE SUPREME COURT, WHICH
ALWAYS IN THEIR EMANANT WISDOM MAKE DECISIONS THAT ARE
SOMETIMES CONTRARY TO WHAT TRIAL COURTS DECIDE.

SO IN MY EXPERIENCE IN ASSESSING THE UPWARDS AMOUNT THAT
WE COULD GET, AND AGAIN, WE'RE NOT TALKING ABOUT PEOPLE IN
TERMS OF THE 53 MILLION, AND THAT IS A WORLDWIDE NUMBER, WE
BELIEVE THAT U.S. ACCOUNTS WERE APPROXIMATELY 7.5 TO 10
MILLION.

MS. REES CAN TALK IN GREATER DETAIL ABOUT HOW INDIVIDUALS
ARE IDENTIFIED WITHIN THAT GROUP, BUT WE WOULD HAVE, YOU KNOW,
AGAIN, AT FACE VALUE, 7.5 MILLION.

IF THERE WERE 10 MILLION PEOPLE, THAT WOULD BE $0.75.

JUDGE KOH IN THE ANTHEM CASE, THAT WAS 115 MILLION, AND I
THINK IT BREAKS DOWN TO A LITTLE BIT OVER A DOLLAR.  IN THE
YAHOO CASE 117 AND A HALF MILLION.  WE HAD 194 MILLION
INDIVIDUALS.  I VALUE THAT AS A DOLLAR WITH A DISCOUNT RATE OF
40 PERCENT BASED UPON LITIGATION RISK, WHICH IS HOW WE DERIVE
117 MILLION.

IS THIS EXACT SCIENCE?

NO, YOUR HONOR, IT IS NOT.  WE TRIED TO APPROACH THIS WITH

10:12AM 1   THE METHODOLOGY OF USING AN EXPERT WHO HAS IDENTIFIED THE VALUE

10:12AM 2   OF THIS INFORMATION ON THE DARK WEB, AND BASED UPON MY

10:12AM 3   EXPERIENCE -- WELL, TODAY, OR MAYBE IN A FEW DAYS, I'LL HAVE

10:12AM 4   PRACTICED FOR 40 YEARS.  AGAIN, SINCE 1999 IN THE AREA OF

10:12AM 5   PRIVACY DATA BREACH OR PRIVACY LITIGATION I THOUGHT THIS TO BE

10:12AM 6   A FAIR AND REASONABLE COMPROMISE OF THE LITIGATION IN WHICH IT

10:12AM 7   CONTINUES TO REMAIN RISKY.

10:13AM 8       DOES THE COURT HAVE ANY PARTICULAR QUESTIONS?

10:13AM 9           THE COURT:  I DO.  I DO.  LET ME FOCUS ON YOUR

10:13AM 10  CY PRES REQUEST HERE.  I'M CURIOUS ABOUT THE NEED TO GO TO MY

10:13AM 11  FORMER COLLEAGUE, YOU SUGGEST ELIZABETH LAPORTE, FOR

10:13AM 12  DETERMINATION OF A CY PRES RECIPIENT.

10:13AM 13      SHE'S AT JAMS NOW, AND I DON'T MEAN TO DISCOURAGE ANY WORK

10:13AM 14  TO HER, BUT IS THAT REALLY NECESSARY?  I UNDERSTAND THAT THERE

10:13AM 15  HAVE BEEN CASES AND LITIGATION AND MENTION IN CASES ABOUT

10:13AM 16  CY PRES RECIPIENTS, AND I APPRECIATE YOUR PROPHYLACTIC LOOK AT

10:13AM 17  THIS TO PERHAPS AVOID ANY OF THAT.

10:13AM 18      BUT I'M JUST CURIOUS WHETHER THAT IS EVEN NECESSARY?  I'M

10:13AM 19  WONDERING IF COUNSEL COULD MEET AND CONFER AND IDENTIFY TWO,

10:13AM 20  THREE, WHATEVER YOU WOULD LIKE, THAT YOU THINK FIT AN

10:13AM 21  APPROPRIATE RECIPIENT SHOULD THAT BE NECESSARY.

10:14AM 22          MR. YACHUNIS:  YOUR HONOR, I WON'T SPEAK FOR

10:14AM 23  GOOGLE'S COUNSEL OF COURSE.  I HAPPEN TO HAVE A LOT OF WORK IN

10:14AM 24  THE CY PRES AREA.

10:14AM 25          JUDGE PROCTOR IN THE NORTHERN DISTRICT OF ALABAMA JUST

10:14AM 1    CHALLENGED ME TO DISCUSS THE ISSUE IN A CASE PENDING BEFORE HIM

10:14AM 2    FOR FINAL APPROVAL.  AND I USED MY EXPERIENCE AS A DRAFTER OF A

10:14AM 3    PROJECT THAT OUR CHIEF JUSTICE IN THE STATE OF FLORIDA ASKED ME

10:14AM 4    TO UNDERTAKE ABOUT FOUR YEARS AGO WHERE IN THE STATE OF FLORIDA

10:14AM 5    THE QUESTION REMAINED, YOU KNOW, WHAT GUIDANCE WAS THERE FOR A

10:14AM 6    JUDGE ON THE ISSUE OF CY PRES, AND I PREPARED A WHITE PAPER ON

10:14AM 7    THAT.  I BELIEVE THERE ARE CERTAIN -- THERE WERE RECIPIENTS WHO

10:14AM 8    SHOULD BE CONSIDERED.  THEY HAVE NOTHING TO DO WITH ME OR ANY

10:14AM 9    BOARD THAT I'VE EVER BEEN A MEMBER OF.

10:14AM 10        I THINK WE CAN DECIDE THAT.

10:14AM 11        I WAS JUST TRYING TO BE -- I THINK BOTH OF US, BOTH SIDES,

10:14AM 12   VERY PROPHYLACTIC IN THE WAY WE ENSURED THAT THERE WAS NO

10:15AM 13   COLLUSION, POSSIBLE INTERFERENCE OR SUGGESTION THAT WE HAD

10:15AM 14   ANYTHING INVOLVING ANY RECIPIENT OF ANY PARTY THAT THE COURT

10:15AM 15   WOULD AVOID.

10:15AM 16        SO OVER -- IT WAS PROBABLY OVERLY CAUTIOUS, BUT OF COURSE

10:15AM 17   I THINK WE CAN COME UP WITH ANY NUMBER OF CANDIDATES TO PROVIDE

10:15AM 18   FOR THE COURT AND FULLY DISCLOSE OUR LACK OF INVOLVEMENT IN ANY

10:15AM 19   OF THOSE ENTITIES, AND I CERTAINLY WOULD REPRESENT THAT TO THE

10:15AM 20   COURT.  I WOULD HAVE NO INVOLVEMENT, AND THE COURT COULD MAKE

10:15AM 21   THOSE SELECTIONS.

10:15AM 22        AND I'VE DONE THE SAME THING IN OTHER SETTLEMENTS IN THIS

10:15AM 23   AREA.

10:15AM 24        THE COURT:  ALL RIGHT.  THANK YOU.  I'LL HEAR FROM

10:15AM 25   MS. REES IN JUST A MOMENT ON THESE AND OTHER POINTS.

10:15AM 1      I ALSO WANT TO ASK A QUESTION ABOUT, YOU PROPOSE SOME

10:15AM 2   DEADLINES, SCHEDULING DEADLINES, AND I'M CURIOUS, SOME OF THOSE

10:15AM 3   TIMELINES SEEM TO BE BASED A LITTLE -- THEY MIGHT BE A LITTLE

10:15AM 4   LONG, LONGER THAN WHAT WE'VE SEEN OR USED TO, BUT IT SEEMS TO

10:15AM 5   ME THAT YOU HAVE DONE THIS, YOU AND YOUR TEAM AND MS. REES,

10:16AM 6   HAVE DONE THIS IN REGARDS TO THE CURRENT COVID CRISIS THAT

10:16AM 7   PERHAPS MIGHT ALLOW FOR SOME GREATER TIME TO CAPTURE RESPONSES

10:16AM 8   AND OPT OUTS AND THINGS.

10:16AM 9           MR. YACHUNIS:  AND, YOUR HONOR, OBVIOUSLY WE WANT TO

10:16AM 10  ENSURE THE SAME ISSUES THAT YOU'RE FOCUSSED IN ON IS FAIRNESS

10:16AM 11  AND ADEQUATE RESPONSE TIME.

10:16AM 12      I'M CERTAINLY AMENABLE TO A CHANGE OR MODIFY.  THEY ARE

10:16AM 13  LONGER.

10:16AM 14      ONE OF THE THINGS I WANT TO MAKE CERTAIN THAT THE COURT

10:16AM 15  UNDERSTANDS IS THAT WE'RE GOING TO BE ABLE TO DELIVER AN E-MAIL

10:16AM 16  NOTICE, WHICH IS NOW ACCEPTABLE UNDER THE NEW RULE AMENDMENT

10:16AM 17  23.

10:16AM 18      ONE OF THE WAYS IN WHICH AN ACCOUNT HOLDER SIGNED UP FOR A

10:16AM 19  GOOGLE PLUS WAS THROUGH AN E-MAIL, AND SO WE'LL BE ABLE TO

10:16AM 20  CONTACT THEM, AND WE DO HAVE A SECOND WAVE OF NOTICE EMBEDDED

10:16AM 21  WITHIN THE NOTICE PLANS SO IN THE EVENT SOMEBODY MISSES THE

10:16AM 22  FIRST ONE, THEY'LL GET A SECOND ONE IN ADVANCE OF THE CLAIM

10:17AM 23  DEADLINE.

10:17AM 24          THE COURT:  WELL, THIS IS ONE OF THOSE CASES WHERE

10:17AM 25  IDENTIFYING THE PARTIES SHOULD BE RELATIVELY EASY BECAUSE, AS

10:17AM  1    YOU SAY, THE PARTY HAD TO MAKE SOME AFFIRMATIVE ACTION TO

10:17AM  2    ACTUALLY JOIN OR SIGN UP OR ENGAGE AND IN THAT PROCESS PROVIDED

10:17AM  3    INFORMATION SUCH THAT GOOGLE HAS THAT.

10:17AM  4        SO I THINK THE -- IDENTIFYING WHO THE PARTIES ARE,

10:17AM  5    PLAINTIFFS ARE, SHOULD BE -- NOTIFYING THEM, SHOULD BE

10:17AM  6    STRAIGHTFORWARD.  OF COURSE THERE WILL BE CHANGES IN E-MAILS

10:17AM  7    AND PEOPLE MOVE AND THAT TYPE OF THING.  YOU HAVE INDICATED

10:17AM  8    PUBLICATION, YOU HAVE SOME PUBLICATION THAT YOU'LL USE, A

10:17AM  9    PR FIRM OR SOMETHING OR WEBSITE AND THEY WILL BE CREATED BY THE

10:17AM  10   ADMINISTRATOR AS WELL.

10:17AM  11       SO IT SEEMS TO ME THAT THE NOTICE IS SUFFICIENT HERE.  I

10:17AM  12   DON'T HAVE ANY CONCERN ABOUT THAT.

10:17AM  13       AS WE LOOK AT GOING FORWARD IN OUR CURRENT HEALTH CRISIS,

10:17AM  14   I THINK MY COLLEAGUES AND I ARE LOOKING AT THE NOTICE

10:18AM  15   PROCEDURES AND ANYTHING THAT HAS TO DO WITH NOTIFYING, ALLOWING

10:18AM  16   PARTIES TIME TO ACCOMPLISH THINGS AND BALANCING THE COVID

10:18AM  17   CRISIS WITH THE TIMELINES THAT WE TYPICALLY HAVE HAD WHEN WE'VE

10:18AM  18   HAD ACCESS TO COURTHOUSES AND OTHER FACILITIES WAS MUCH EASIER.

10:18AM  19   SO I'M COGNIZANT OF THAT.

10:18AM  20       I'M NOT ADVERSE TO LENGTHIER TIMES, PARTICULARLY IN OUR

10:18AM  21   CURRENT SITUATION.  I JUST DID WANT TO COMMENT ON THAT.

10:18AM  22            MR. YACHUNIS:  YOUR HONOR, LET ME -- I HOPE THIS IS

10:18AM  23   AN INVITATION TO DISCUSS THE ISSUE.  IF WE WERE DEALING WITH

10:18AM  24   U.S. MAIL, PERHAPS THE COVID-19 CRISIS MIGHT IMPACT MAIL

10:18AM  25   DELIVERY.

10:18AM 1      CERTAINLY THERE ARE SOME MEMBERS OF OUR COMMUNITIES WHO

10:18AM 2  ARE RETICENT TO TRY TO CUT PAPER DELIVERED TO THEIR HOMES.  I

10:18AM 3  HAPPEN TO HAVE HAD AN EXPERIENCE RECENTLY WHERE SOMEBODY

10:18AM 4  REACHED OUT ON MY NEIGHBORHOOD CHAT AND SAID DOES ANYONE HAVE

10:18AM 5  ANY HYDROGEN PEROXIDE?  AND I SAID, YES, I HAVE AN EXTRA

10:18AM 6  BOTTLE.  AND THE WOMAN SAID COULD YOU LEAVE IT ON MY PORCH?

10:19AM 7  AND I WAS THINKING, WELL, WHY DON'T YOU JUST KNOCK ON MY DOOR.

10:19AM 8  AND THEN I REALIZED THERE'S A SENSITIVITY TO PEOPLE TOUCHING

10:19AM 9  THINGS THAT OTHERS HAVE TOUCHED.

10:19AM 10     HERE WE'RE DEALING WITH AN E-MAIL NOTICE THAT COMES TO

10:19AM 11 YOUR COMPUTER AND SO CERTAINLY THAT ISSUE ISN'T INVOLVED.

10:19AM 12     AND I JUST HAD A CONVERSATION IN CONNECTION WITH ANOTHER

10:19AM 13 CASE WHERE PEOPLE SAID, WELL, CLAIMS RATES ARE GOING TO GO UP

10:19AM 14 BECAUSE PEOPLE ARE AT HOME.  THEY'RE GOING TO BE MONITORING

10:19AM 15 THEIR COMPUTER BECAUSE THEY HAVE MORE TIME ON THEIR HANDS.  I

10:19AM 16 DON'T KNOW IF THAT ANECDOTAL COMMENT IS OF ANY VALUE, BUT

10:19AM 17 CERTAINLY WE'RE TRYING TO MAKE CERTAIN THAT IN THIS PRESENT

10:19AM 18 UNUSUAL ENVIRONMENT THAT EVEN BRINGS US TO TALK TO YOU TODAY

10:19AM 19 VIA ZOOM, YOU KNOW, ACCOMMODATES FOR THAT.

10:19AM 20          THE COURT:  ALL RIGHT.  THANK YOU.

10:19AM 21     THE OTHER FACTORS I WANTED TO ASK YOU ABOUT, AND I REALIZE

10:19AM 22 THIS IS PRELIMINARY APPROVAL, BUT I WONDERED IF YOU WERE GOING

10:19AM 23 TO SPEAK NOW OR AT THE TIME OF FINAL APPROVAL ABOUT THE

10:19AM 24 NORTHERN DISTRICT OF CALIFORNIA GUIDANCE FACTORS THAT WE HAVE

10:20AM 25 IMPLEMENTED RECENTLY.

10:20AM  1    AND I THINK YOU TOUCH ON THEM BRIEFLY, NOT SPECIFICALLY,

10:20AM  2    BUT YOUR PAPERS AT LEAST CAPTURE SOME OF THOSE ELEMENTS, AND IF

10:20AM  3    YOU CAN.

10:20AM  4         MR. YACHUNIS:  YES, I CAN TOUCH ON THOSE.  SO, YOUR

10:20AM  5    HONOR, ONE OF THE MOST IMPORTANT THINGS, AND I'VE HAD OTHER

10:20AM  6    CASES IN THE NORTHERN DISTRICT, IS, WELL, WHAT WOULD YOU GET IF

10:20AM  7    THE CLASS WERE TO SUCCEED?  AND THAT'S THE VERY REASON WHY

10:20AM  8    WE'RE BEFORE YOU SEEKING TO COMPROMISE IS BECAUSE THAT'S THE

10:20AM  9    UNKNOWN.

10:20AM  10   ONE OF THE THINGS THE DEFENDANTS ARGUE IN THESE CASES IS

10:20AM  11   THE INDIVIDUALIZED NATURE OF THE REPERCUSSIONS FROM A DATA

10:20AM  12   BREACH, AND HERE WE'RE TALKING ABOUT A DATA EXPOSURE.

10:20AM  13   SO THE DEFENDANT MAY NOT HAVE GIVEN ME A PUSH ON STANDING

10:20AM  14   SAYING THAT YOU HAVE NO PROOF THAT THIS INFORMATION WAS TAKEN

10:20AM  15   BY ANYONE.  IT WAS MERELY EXPOSED TO THESE THIRD PARTY

10:21AM  16   CONTRACTORS WHO WE HAD ALREADY APPROVED.  THAT'S CERTAINLY

10:21AM  17   IMPORTANT.

10:21AM  18   BUT IN TERMS OF HOW ANYONE WAS INDIVIDUALLY DAMAGED, I

10:21AM  19   FOCUSSED IN THROUGH MR. RATNER A WAY IN WHICH I COULD MONETIZE

10:21AM  20   THE AMOUNT OF THE VALUE OF THIS INFORMATION ON THE DARK WEB,

10:21AM  21   AND AS I INDICATED EARLIER, HE HAD BETWEEN $0.20 AND $29.

10:21AM  22        THE COURT:  LET ME INTERRUPT YOU FOR A MOMENT AND

10:21AM  23   JUST OPINE THAT IT IS INTERESTING THAT WE'RE USING THAT AS A

10:21AM  24   DAMAGE MODEL, THAT IS, WHAT IS THE STREET VALUE OF THIS DOWN A

10:21AM  25   BACK ALLEY.  IT'S LIKE WHAT IS THE VALUE OF MY CAR RADIO ONCE

10:21AM 1    IT'S STOLEN AND SOMEBODY WANTS TO SELL IT IN A DARK ALLEY AND

10:21AM 2    WE'LL USE THAT IN LITIGATION TO SET THE VALUE?

10:21AM 3         THERE'S SOMETHING THAT IS -- I UNDERSTAND YOU'RE DOING THE

10:21AM 4    BEST THAT YOU CAN, BUT THERE IS SOMETHING -- AND I DON'T MEAN

10:21AM 5    TO BE FLIP OR LIGHT ABOUT THIS, BUT WE'RE LOOKING AT NEFARIOUS

10:22AM 6    CONDUCT IN USING THAT AS A BENCHMARK FOR LEGITIMATE

10:22AM 7    TRANSACTIONS, AND I SUPPOSE IT'S JUST IRONIC MAYBE, MAYBE OTHER

10:22AM 8    PEOPLE WOULD USE DIFFERENT LANGUAGE TO DESCRIBE THAT, BUT IT IS

10:22AM 9    WHAT IT IS, ISN'T IT?

10:22AM 10        MR. YACHUNIS:  IT'S NOT IRONY.  IT IS -- WHEN YOU

10:22AM 11   THINK OF PRIVACY, THE CONCEPT OF PRIVACY AT LEAST IN THE UNITED

10:22AM 12   STATES ARISES IN JURISPRUDENCE IN THE 19TH CENTURY.

10:22AM 13        AND IN ESSENCE THAT LAW REALLY REMAINS THE SAME UNTIL THE

10:22AM 14   21ST CENTURY, AND TODAY WE HAVE TECHNOLOGY OF A TYPE THAT

10:22AM 15   DOESN'T FIT THE CONCEPTS OF PRIVACY.

10:22AM 16        CALIFORNIA CERTAINLY HAS BEEN ON THE CUTTING EDGE, I

10:22AM 17   BELIEVE, OF BOTH STATE AND FEDERAL REGULATORS IN TERMS OF

10:22AM 18   CREATING A WAY IN WHICH PEOPLE CAN THINK MORE ABOUT PRIVACY.

10:22AM 19        THE COURT:  CALIFORNIA JUST ENACTED NEW LEGISLATION

10:22AM 20   THAT YOU'RE PROBABLY AWARE OF THAT COMPANIES -- MS. REES IS

10:23AM 21   PROBABLY ADVISING COMPANIES IN REGARDS TO CALIFORNIA'S NEW

10:23AM 22   REGULATIONS AND STATE REGULATIONS THAT ARE JUST AMAZINGLY

10:23AM 23   THOROUGH AND REQUIRES A LOT OF EFFORT, I'M SURE, ON MS. REES'S

10:23AM 24   CLIENTS TO REMANUFACTURE AND RESTRUCTURE HOW THEY HANDLE ISSUES

10:23AM 25   RECOGNIZING THIS.

10:23AM 1      SO I APPRECIATE YOUR SHOUT OUT TO THE GREAT STATE OF

10:23AM 2   CALIFORNIA.

10:23AM 3      WE DO REMAIN HERE, I THINK THE STATE REMAINS ON THE

10:23AM 4   FOREFRONT OF THIS LITIGATION.

10:23AM 5      BUT I WAS JUST MAKING A COMMENT ABOUT WHERE DO YOU GO TO

10:23AM 6   PRICE THIS?  IT'S NOT LIKE WHAT IS THE PRICE OF CUCUMBERS AND

10:23AM 7   TOMATOES AT MARKETS.  IT'S REALLY LET'S GO DOWN THE DARK ALLEY

10:23AM 8   AND SEE WHAT THEY'LL GIVE FOR THAT.  I'M NOT DISPARAGING IT AT

10:23AM 9   ALL, I'M JUST SUGGESTING AND IT'S THE MARKETPLACE THAT WE LIVE

10:23AM 10   IN IN SOME OF THESE CASES, SO I CAPTURE THAT.

10:23AM 11      BUT MY QUESTION WAS FOCUSSED ON THE GUIDANCE FACTORS THAT

10:24AM 12   THE NORTHERN DISTRICT HAS, AND WE HAVE 11 OF THEM.  I DON'T

10:24AM 13   THINK THE PLEADINGS SPECIFICALLY ADDRESSED EACH OF THE 11

10:24AM 14   FACTORS, BUT I CAN LOOK AT WHAT YOU'VE SAID IN YOUR PLEADINGS,

10:24AM 15   IN YOUR COMMENTS THIS MORNING REGARDING THE PROPOSED SETTLEMENT

10:24AM 16   AND THE FACTORS, WE CAN ADDRESS THOSE AT THE FINAL SETTLEMENT,

10:24AM 17   AND I THINK THAT'S PROBABLY MORE APPROPRIATE, YOU'LL TALK AND

10:24AM 18   GIVE AN EXAMPLE ABOUT OPT OUTS AND THOSE TYPES OF THINGS.

10:24AM 19      YOU'VE ALREADY TOLD ME ABOUT THE ADMINISTRATOR, YOU'VE

10:24AM 20   TALKED ABOUT THE NOTICE, YOU'VE TALKED ABOUT ATTORNEYS' FEES,

10:24AM 21   YOU'VE TALKED ABOUT SERVICE.  I THINK YOU'VE INDICATED, AT

10:24AM 22   LEAST PERIPHERALLY, THAT THERE IS NO -- THE AWARDS DON'T

10:24AM 23   UNJUSTLY FAVOR ANY PLAINTIFFS OVER OTHERS, AND THE SETTLEMENT

10:24AM 24   PROVIDES A FAVORABLE RECOVERY, I THINK YOU'VE TALKED ABOUT

10:24AM 25   THAT.

10:24AM 1      THERE IS A DIFFERENCE IN THE -- I THINK YOUR PLEADINGS

10:24AM 2  INITIALLY AS TO THE CLASS AS TO WHAT THIS SETTLEMENT INVOLVES,

10:25AM 3  AND I THINK YOU'VE EXPLAINED THAT TO ME AS WELL.  SO I DO THINK

10:25AM 4  THAT YOU HAVE COVERED SUFFICIENTLY THE NORTHERN DISTRICT

10:25AM 5  FACTORS.  WE HAVE TALKED ABOUT CY PRES AWARDS.

10:25AM 6      AND UNLESS THERE'S ANYTHING FURTHER, I'LL TURN TO

10:25AM 7  MS. REES, WHO HAS BEEN INCREDIBLY PATIENT HERE, AND ASK IF SHE

10:25AM 8  HAS ANY COMMENTS IN REGARDS TO THE PRELIMINARY SETTLEMENT

10:25AM 9  MOTION.

10:25AM 10      MS. REES.

10:25AM 11          MS. REES:  THANK YOU, YOUR HONOR.

10:25AM 12      ARE YOU ABLE TO HEAR ME OKAY?

10:25AM 13          THE COURT:  I AM, YES.

10:25AM 14          MS. REES:  OKAY.  I'LL HOLD UP MY MICROPHONE HERE

10:25AM 15  JUST TO BE SURE.  SO FIRST I WOULD JUST LIKE TO THANK THE COURT

10:25AM 16  STAFF FOR PUTTING THIS ZOOM CONFERENCE TOGETHER SO THAT WE CAN

10:25AM 17  GO FORWARD WITH THE HEARING.  I KNOW IT MUST HAVE BEEN A LOT OF

10:25AM 18  EXTRA WORK SO WE'RE DEFINITELY VERY APPRECIATIVE OF THAT.

10:25AM 19          THE COURT:  WELL, WE'RE IN CALIFORNIA, MS. REES, AND

10:25AM 20  WE ALL HAVE -- WE'RE BORN WITH TECHNOLOGY.  WE'RE WEANED ON IT.

10:25AM 21  OF COURSE.  THANK YOU FOR SHOUTING OUT MS. KRATZMANN AND MY

10:25AM 22  STAFF TO HELP THOSE OF US WHO ARE IMMIGRANTS TO TECHNOLOGY TO

10:26AM 23  LEARN THIS AND CAPTURE.

10:26AM 24      AND THANK YOU ALL.  PARDON ME FOR INTERRUPTING YOU, BUT I

10:26AM 25  DO WANT TO INDICATE THAT WE ARE PROCEEDING BY WAY OF

10:26AM 1    VIDEOCONFERENCING BECAUSE OF THE COVID CRISIS.  I APPRECIATE

10:26AM 2    ALL OF YOUR WILLINGNESS IN DIFFERENT PARTS OF OUR GREAT COUNTRY

10:26AM 3    TO PARTICIPATE.

10:26AM 4         SO MS. REES.

10:26AM 5              MS. REES:  THANK YOU.  SO I THINK THE FIRST POINT

10:26AM 6    I'D LIKE TO ADDRESS IS THE CY PRES ISSUE THAT YOUR HONOR

10:26AM 7    RAISED.  WE DID, YOU KNOW, PREFER TO HAVE AT THIS SETTLEMENT

10:26AM 8    THIS PROCEDURE OF HAVING A NEUTRAL THIRD PARTY SELECT CY PRES

10:26AM 9    RECIPIENTS, AND THAT'S REALLY BECAUSE WE HAVE RECENTLY SEEN

10:26AM 10   QUITE A FEW OBJECTIONS TO SETTLEMENTS THAT INCLUDE CY PRES, AND

10:26AM 11   ONE OF THE MAJOR OBJECTIONS IS A CLAIM THAT THE PARTIES ARE

10:26AM 12   SELECTING CY PRES RECIPIENTS THAT THEY HAVE CONNECTIONS TO, AND

10:26AM 13   THAT IT JUST ISN'T A NEUTRAL ENOUGH PROCESS.

10:26AM 14        SO YOUR HONOR IS CORRECT THAT THE REASON THAT IT'S IN

10:26AM 15   THERE IS THAT, YOU KNOW, WE ARE HOPING TO AVOID THOSE TYPES OF

10:26AM 16   ISSUES WITH THIS SETTLEMENT, SO THAT WAS THE REASON FOR THAT.

10:27AM 17        SO WE ARE HAPPY TO MEET AND CONFER WITH PLAINTIFFS ABOUT

10:27AM 18   SELECTING RECIPIENTS.

10:27AM 19        BUT THE THIRD PARTY PROCESS WITH THE NEUTRAL WAS SOMETHING

10:27AM 20   THAT WE REALLY HOPED WOULD, YOU KNOW, JUST HELP JUST TO DEAL

10:27AM 21   WITH ANY POTENTIAL OBJECTIONS THAT MIGHT COME ALONG IN THAT

10:27AM 22   REGARD.

10:27AM 23              THE COURT:  WELL, I THINK IT'S A GOOD SOLUTION.

10:27AM 24   IT'S A FORWARD LOOKING SOLUTION, AND IT DIMINISHES, DOES IT,

10:27AM 25   THEN WHAT WOULD BE PAID OUT OF THE SETTLEMENT PROCEEDS?

| | | |
|---|---|---|
| 10:27AM | 1 | MS. REES:  IT WOULD BE.  IT WOULD BE. |
| 10:27AM | 2 | WE DID TRY TO DRAFT A PROCEDURE THAT WOULD BE FAIRLY |
| 10:27AM | 3 | STREAMLINED WHERE THE BURDEN WOULD BE ON THE CY PRES RECIPIENTS |
| 10:27AM | 4 | TO PUT TOGETHER ESSENTIALLY AN APPLICATION WHERE THEY WOULD |
| 10:27AM | 5 | JUST PROVIDE INFORMATION ABOUT WHAT THEY DO, WHAT CONNECTIONS |
| 10:27AM | 6 | THEY HAVE TO THE PARTIES, IF ANY.  AND THEN JUDGE LAPORTE'S |
| 10:27AM | 7 | ROLE WOULD REALLY BE TO REVIEWING THAT, WHATEVER APPLICATIONS |
| 10:27AM | 8 | COME IN, AND THEN MAKING THE DECISION AMONG THOSE WHICH, IF |
| 10:27AM | 9 | ANY, TO RECOMMEND. |
| 10:27AM | 10 | SO IT DIDN'T SEEM LIKE IT WOULD BE A HUGE AMOUNT OF WORK |
| 10:28AM | 11 | FOR THE NEUTRAL. |
| 10:28AM | 12 | THE COURT:  PROBABLY NOT.  IT PROBABLY WOULDN'T. |
| 10:28AM | 13 | OF COURSE THE COURT SITS AS FIDUCIARY FOR THE CLASS, AND |
| 10:28AM | 14 | I'M JUST CURIOUS WHETHER THAT WOULD IN SOME WAY INHIBIT |
| 10:28AM | 15 | RECOVERY AND WHAT THE EXTENT OF IT WAS.  I DON'T KNOW WHAT THE |
| 10:28AM | 16 | FEES OF THAT WOULD BE, $10,000, $20,000.  I HAVE NO IDEA WHAT |
| 10:28AM | 17 | THAT MARKET IS. |
| 10:28AM | 18 | THIS IS -- WE'RE PROBABLY TALKING ABOUT, MS. REES, SOME OF |
| 10:28AM | 19 | YOUR COLLEAGUES WHO SHOULD WISH TO LEAVE, OR MR. AZAR OR |
| 10:28AM | 20 | MR. YACHUNIS, THIS SOUNDS LIKE SOMEBODY COULD CREATE A CLEARING |
| 10:28AM | 21 | HOUSE FOR CY PRES RECIPIENTS AND CREATE A WHOLE NEW JOB MARKET |
| 10:28AM | 22 | FOR THEMSELVES SHOULD THEY WISH TO DO SO. |
| 10:28AM | 23 | BUT I DON'T HAVE -- I'M NOT -- I DON'T HAVE ANY REAL |
| 10:28AM | 24 | OBJECTION TO JUDGE LAPORTE LOOKING AT THIS AND HELPING YOU OUT |
| 10:28AM | 25 | AND FINDING THIS.  AND I COMMENT ON IS IT NECESSARY?  AND I |

10:28AM  1    APPRECIATE THE FACT THAT YOU WISH TO OR BOTH SIDES WISH TO

10:28AM  2    PROCEED WITH EXTREME CAUTION TO ADVANCE YOUR SETTLEMENT.

10:29AM  3         AS I LOOK AT THE SETTLEMENT, THIS CASE SETTLED WITH OR THE

10:29AM  4    SETTLEMENT WAS REACHED ABOUT A YEAR AFTER THE FILING OF THE

10:29AM  5    FIRST COMPLAINT, MAYBE NOT EVEN.

10:29AM  6         MY SENSE IS THAT IT LOOKS LIKE THERE WAS NO REAL -- THERE

10:29AM  7    WERE NO DEPOSITIONS, THERE WAS INFORMAL DISCOVERY, AND THEN THE

10:29AM  8    CASE SETTLED ONE DAY WITH A GOOD MEDIATOR.  IT SEEMS TO BE

10:29AM  9    PRETTY STRAIGHTFORWARD.

10:29AM  10        BUT LET ME LET YOU CONTINUE, MS. REES.  I'M SORRY.

10:29AM  11             MS. REES:  THANK YOU.  SO ON THE ISSUE OF E-MAIL

10:29AM  12   NOTICE, YOU KNOW, WE ARE PUTTING TOGETHER A LIST OF E-MAILS OF

10:29AM  13   THE GOOGLE PLUS USERS THAT COULD POTENTIALLY HAVE BEEN AFFECTED

10:29AM  14   BY THESE BUGS.

10:29AM  15        WE -- GOOGLE DOESN'T HAVE DATA THAT WOULD ALLOW IT TO

10:29AM  16   SPECIFICALLY IDENTIFY EACH PERSON THAT QUALIFIES AS A MEMBER OF

10:29AM  17   THE CLASS, BUT CERTAINLY THERE ARE E-MAIL ADDRESSES ASSOCIATED

10:29AM  18   WITH THESE GOOGLE PLUS ACCOUNTS, SO THAT'S SOMETHING THAT CAN

10:29AM  19   BE GATHERED FOR PURPOSES OF THE E-MAIL NOTICE, YOU KNOW,

10:30AM  20   SUBJECT ONLY TO, AS YOUR HONOR MENTIONED, OCCASIONALLY THERE

10:30AM  21   WILL BE BOUNCE BACKS OR SOMEONE WHO DELETED THEIR E-MAILS SO

10:30AM  22   THERE IS SOME EDGE CASES WHERE SOMEONE MIGHT NOT GET THE

10:30AM  23   E-MAIL, BUT FOR THE MOST PART WE DO THINK THE E-MAIL IS A VERY

10:30AM  24   GOOD AND COMPREHENSIVE WAY OF DOING THE NOTICE HERE.

10:30AM  25        ONE OTHER ISSUE I JUST WANTED TO REPORT ON IS THAT THE

10:30AM 1    DEFENDANTS DID DO THE CAFA NOTICE TO GOVERNMENT OFFICIALS.

10:30AM 2    THAT WAS DONE IN JANUARY.  SO FOUR MONTHS AGO.  WE HAVEN'T

10:30AM 3    RECEIVED ANY RESPONSES FROM THE GOVERNMENT OFFICIALS ON THAT,

10:30AM 4    AND SO THAT'S THE STATUS OF THE CAFA NOTICE.

10:30AM 5            THE COURT:  THANK YOU.

10:30AM 6            MS. REES:  AND THEN BEYOND THAT WE DO BELIEVE THAT

10:30AM 7    THIS IS A VERY FAIR AND ADEQUATE SETTLEMENT.  AS I THINK, YOU

10:30AM 8    KNOW, PLAINTIFFS' COUNSEL, FRANKLY, ACKNOWLEDGED THERE WERE A

10:30AM 9    LOT OF CHALLENGES FOR PLAINTIFFS IN TRYING TO PROVE LIABILITY

10:30AM 10   AND DAMAGES HERE.

10:30AM 11       THIS IS A CASE WHERE THE TYPE OF INFORMATION THAT WAS AT

10:30AM 12   ISSUE THAT WAS EXPOSED BY THESE BUGS WAS REALLY JUST THE

10:30AM 13   PROFILE FIELDS IN SOMEONE'S SOCIAL MEDIA ACCOUNTS, SO IT'S

10:31AM 14   THINGS LIKE NAME, HOME TOWN, OCCUPATION.  IT WAS NOT FIELDS

10:31AM 15   THAT ARE ASKING FOR YOUR SOCIAL SECURITY NUMBER, CREDIT CARD,

10:31AM 16   ANY OF THESE REALLY PRIVATE SENSITIVE TYPES OF DATA THAT YOU

10:31AM 17   OFTEN SEE IN THESE BREACHES.

10:31AM 18       SO THAT HAD BEEN ONE OF THE ISSUES THAT, YOU KNOW, FOR THE

10:31AM 19   MOST PART THIS INFORMATION ISN'T GOING TO BE EXTREMELY

10:31AM 20   SENSITIVE, BUT IN SOME CASES SOME PEOPLE COULD HAVE HAD THAT

10:31AM 21   INFORMATION IN THERE, AND THAT'S WHY THE CLASS IS DIRECTED TO

10:31AM 22   ANYONE WHO DID HAVE PRIVATE INFORMATION IN THOSE GOOGLE PLUS

10:31AM 23   PROFILE DEALS.

10:31AM 24       BUT I THINK, AS PLAINTIFFS' COUNSEL ALSO MENTIONED, THIS

10:31AM 25   WAS A CASE ABOUT INADVERTENT SOFTWARE BUGS.  THIS IS NOT A CASE

10:31AM 1   OF CLAIMING SOME KIND OF INTENTIONAL OR DELIBERATE DISCLOSURE

10:31AM 2   OF INFORMATION.  THIS IS A CASE WHERE THERE WAS NO REASON TO

10:31AM 3   THINK THAT ANY OF THE INFORMATION THAT WAS EXPOSED WAS ACTUALLY

10:31AM 4   MISUSED.  SO THERE WERE, I THINK, A LOT OF ISSUES HERE WITH

10:31AM 5   RESPECT TO PLAINTIFFS' CASE THAT WE HAD RAISED IN OUR MOTION TO

10:31AM 6   DISMISS THAT WAS PENDING WHEN WE WENT AHEAD AND DID THE

10:32AM 7   MEDIATION WITH RANDALL WULFF AND WE WERE ABLE TO REACH THE

10:32AM 8   SETTLEMENT, BUT WE DO BELIEVE IN LIGHT OF THAT IT IS VERY FAIR

10:32AM 9   AND ADEQUATE.

10:32AM 10          THE COURT:  THANK YOU.  AND YOU MENTIONED ONE OF THE

10:32AM 11  GUIDANCE FACTORS, THE N.D. CAL GUIDANCE FACTORS, WHICH WAS THE

10:32AM 12  CAFA NOTICE, AND SO THANK YOU FOR CAPTURING THAT.

10:32AM 13      I ALSO LOOK AT THE RELIEF, THERE IS NOT INJUNCTIVE RELIEF,

10:32AM 14  AND I THINK WE'VE HEARD OF THAT, AND THERE'S NO REQUEST THAT

10:32AM 15  GOOGLE PAY FOR SECURITY PROVIDERS OR PEOPLE WHO MONITOR CREDIT

10:32AM 16  REPORTS AND THINGS.  WE SOMETIMES SEE THAT IN SETTLEMENTS WHERE

10:32AM 17  THERE HAVE BEEN ACTUAL BREACHES OF SENSITIVE INFORMATION, ET

10:32AM 18  CETERA.

10:32AM 19      HERE IT'S A PEEK AT NAMES, PERHAPS ADDRESSES, BUT A PEEK

10:32AM 20  THAT IT APPEARS THAT THE INDIVIDUAL SHOULD NOT HAVE HAD ACCESS

10:32AM 21  TO, AND THAT'S WHAT IT IS.

10:32AM 22          ALL RIGHT.  THANK YOU VERY MUCH.

10:32AM 23      AND THE ATTORNEYS' FEES, IT LOOKS LIKE IT'S THE -- THE

10:32AM 24  REQUEST IS FOR UP TO 25 PERCENT, AND GOOGLE RESERVES THE RIGHT

10:33AM 25  TO CHALLENGE ANY REQUEST IN EXCESS OF THAT.

10:33AM  1          IS THAT RIGHT, MS. REES?

10:33AM  2              MS. REES:  YES, THAT'S CORRECT?

10:33AM  3              THE COURT:  THANK YOU.

10:33AM  4          ALL RIGHT.  ANYTHING FURTHER?  MR. AZAR, YOU HAVE BEEN

10:33AM  5      ELOQUENT IN YOUR SILENCE, SIR.  ANYTHING YOU WOULD LIKE TO ADD

10:33AM  6      TO THE CONVERSATION?

10:33AM  7              MR. AZAR:  NO.  JUDGE, I MISS BEING IN CALIFORNIA.

10:33AM  8              THE COURT:  WELL, IT'S ALWAYS HERE.  YOU ARE

10:33AM  9      WELCOME.

10:33AM  10             MR. AZAR:  I WISH I COULD COME OUT THERE.  I WENT TO

10:33AM  11     LAW SCHOOL IN SANTA CLARA, AND I WISH I COULD COME OUT THERE

10:33AM  12     AND VISIT.  MY DAUGHTER LIVES IN SAN FRANCISCO, AND I'M STUCK

10:33AM  13     HERE AT HOME AND QUARANTINED.

10:33AM  14             THE COURT:  WELL, YES, YES, WE'RE ALL SUFFERING THAT

10:33AM  15     BUT BETTER SAFE.

10:33AM  16         YOU KNOW, I WAS JUST AT A MEETING YESTERDAY WHERE WE WERE

10:33AM  17     DISCUSSING HOW THE CIRCUITS AND COURTS ARE GOING TO RESUME

10:33AM  18     OPERATIONS, AND I SHOULD TELL YOU THAT THE SPIRIT OF THE COURT

10:33AM  19     IS THAT WE WILL RESUME OUR OPERATIONS BUT ALWAYS WITH AN EYE

10:34AM  20     TOWARDS THE SAFETY OF THE PUBLIC AND OUR STAFF, AND THAT'S

10:34AM  21     PARAMOUNT.

10:34AM  22         SO AGAIN, PROCEEDING THIS WAY THROUGH THE ZOOM VENUE AND

10:34AM  23     OTHERS THAT WE'RE USING IS -- ALLOWS THE BUSINESS OF THE COURTS

10:34AM  24     TO GO FORWARD, IT ALLOWS YOUR RESPECTIVE CLIENTS TO HAVE THEIR

10:34AM  25     DAY IN COURT UNIMPEDED BY THE CRISIS AND WE, THE COURTS,

| | | |
|---|---|---|
| 10:34AM | 1 | ENDEAVOR TO DO ALL OF THIS AND TO ACCOMPLISH WHAT WE CAN TO |
| 10:34AM | 2 | ASSIST YOU AND YOUR CLIENTS AS WE GO FORWARD. |
| 10:34AM | 3 | SO THANK YOU VERY MUCH. |
| 10:34AM | 4 | ANYTHING FURTHER THEN FROM THE PLAINTIFFS ON THE MOTION |
| 10:34AM | 5 | FOR PRELIMINARY APPROVAL? |
| 10:34AM | 6 | MR. YACHUNIS: NO, YOUR HONOR. |
| 10:34AM | 7 | IF YOU COULD INDULGE ME. ABOUT TWO AND A HALF HOURS AGO |
| 10:34AM | 8 | MY FIRST GRANDSON, JAMES HENRY YACHUNIS, WAS BORN, AND IF I WAS |
| 10:34AM | 9 | A LITTLE BIT DISCOMBOBULATED THIS MORNING IT WAS BECAUSE OF THE |
| 10:34AM | 10 | EXCITEMENT OF MY FIRST GRANDSON. I AM VERY HAPPY. |
| 10:34AM | 11 | THE COURT: WELL, CONGRATULATIONS. I'M SURE YOU'LL |
| 10:34AM | 12 | TELL HIM THAT ON HIS BIRTHDAY YOU WERE IN FEDERAL COURT, |
| 10:35AM | 13 | VIRTUALLY IN FEDERAL COURT. WELL, I APPRECIATE THAT. |
| 10:35AM | 14 | ALL RIGHT. THANK YOU FOR THAT. THANK YOU FOR THE |
| 10:35AM | 15 | DISCUSSION THIS MORNING. IT WAS HELPFUL. I DO, LOOKING AT THE |
| 10:35AM | 16 | TOTALITY OF THE CIRCUMSTANCES AND YOUR PLEADINGS, YOU HAVE LAID |
| 10:35AM | 17 | OUT A SETTLEMENT IN THIS CASE THAT IS FAIR, ADEQUATE, AND |
| 10:35AM | 18 | REASONABLE. |
| 10:35AM | 19 | THE COURT WILL GRANT THE RELIEF REQUESTED. I'LL CERTIFY |
| 10:35AM | 20 | THE SETTLEMENT CLASS AS DEFINED. I WILL GRANT PRELIMINARY |
| 10:35AM | 21 | APPROVAL OF THE SETTLEMENT AGREEMENT. THE NOTICE PROVISIONS |
| 10:35AM | 22 | THAT YOU'VE CREATED ARE APPROPRIATE. IF I HAVEN'T PREVIOUSLY, |
| 10:35AM | 23 | I THINK I HAVE THOUGH, I'LL APPOINT OR REAPPOINT THE CLASS |
| 10:35AM | 24 | COUNSEL AS INDICATED AND REQUESTED AND APPOINT THE NAMED |
| 10:35AM | 25 | PLAINTIFFS AS CLASS REPRESENTATIVES. |

10:35AM 1    NOW, WHAT DATE SHOULD WE SET FOR FINAL APPROVAL?  NOW, LET

10:35AM 2  ME INDICATE THAT I'M HAPPY TO ACCEPT THE DATES THAT YOU HAVE

10:36AM 3  OFFERED IN YOUR ORDER.

10:36AM 4    MAYBE I'LL DO THIS, AND MAYBE THE MOST PRUDENT THING TO DO

10:36AM 5  IS THIS, IS TO ASK YOU TO MEET AND CONFER TO FINALIZE THE

10:36AM 6  NOTICE SCHEDULES AND THEN YOU CAN SUGGEST A FINAL DATE AFTER

10:36AM 7  YOU TALK WITH MS. KRATZMANN, AND SHE'LL BE ABLE TO PROVIDE YOU

10:36AM 8  A FINAL SETTLEMENT DATE THAT -- ON OUR CALENDARS JUST BECAUSE

10:36AM 9  DEPENDING ON HOW MUCH TIME YOU NEED, WE'LL HAVE TO LOOK AND SEE

10:36AM 10  WHAT OUR OPERATIONS PERMIT FOR THAT PURPOSE.

10:36AM 11    I'M HAPPY TO INCLUDE THE RECOMMENDATION THAT JUDGE LAPORTE

10:36AM 12  BE CONTACTED TO IDENTIFY THE CY PRES RECIPIENT AND RECEIVE

10:36AM 13  THAT -- YOU'LL RECEIVE THAT, AND YOU'LL INCLUDE AT LEAST HER

10:36AM 14  RECOMMENDATION AND THE REASONS FOR IT IN YOUR PROPOSED

10:36AM 15  SETTLEMENT, FINAL SETTLEMENT FOR FINAL APPROVAL.

10:36AM 16    DOES THAT MAKE SENSE TO YOU?

10:36AM 17    MR. YACHUNIS:  IT DOES, YOUR HONOR.  SHOULD WE

10:36AM 18  SUBMIT IN CHAMBERS, ONCE MS. REES AND I HAVE HAD A CHANCE TO

10:37AM 19  TALK TO MS. KRATZMANN WITH THAT DATE, A WORD VERSION OF THE

10:37AM 20  ORDER THAT IS SUBMITTED AS AN EXHIBIT?

10:37AM 21    THE COURT:  YES.

10:37AM 22    MR. YACHUNIS:  WE'LL DO THAT.

10:37AM 23    THE COURT:  YES.  A WORD VERSION WOULD BE

10:37AM 24  PREFERABLE, RIGHT, ADRIANA?  YOU'D LIKE THAT AND THEN YOU CAN

10:37AM 25  MODIFY IF NEEDED?

10:37AM 1          THE CLERK:  YES, YOUR HONOR.

10:37AM 2          THE COURT:  ALL RIGHT.  THANK YOU.  IS THERE

10:37AM 3    ANYTHING ELSE?  LET ME INDICATE, IF I HADN'T, THE COURT FINDS

10:37AM 4    THAT THIS SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

10:37AM 5          RULE 23 HAS BEEN MET, AND THE COURT WILL PRELIMINARILY

10:37AM 6    APPROVE THIS SETTLEMENT AS INDICATED.  AND WE'LL WAIT TO HEAR

10:37AM 7    FROM YOU AND YOUR DOCUMENT AS TO WHAT YOU WOULD LIKE AS A FINAL

10:37AM 8    APPROVAL DATE AND WE'LL SELECT THAT.

10:37AM 9          HOPEFULLY THAT CAN BE IN PERSON.  IF NOT, WE HAVE THE

10:37AM 10   BENEFIT OF THIS TECHNOLOGY TO PROCEED IF WE NEED TO.

10:37AM 11         ANYTHING FURTHER, COUNSEL?

10:37AM 12            MR. YACHUNIS:  NO, YOUR HONOR, NOT FROM PLAINTIFFS.

10:37AM 13         MS. REES:  NO, YOUR HONOR.

10:37AM 14         THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  WE'LL

10:38AM 15   DISENGAGE THIS.  IT'S GREAT SEEING YOU ALL HERE AND BE SAFE AND

10:38AM 16   YOU AND YOUR FAMILIES AND WE'LL SEE YOU SOON.  THANK YOU.

10:38AM 17         MS. REES:  THANK YOU.

10:38AM 18         THE CLERK:  THANK YOU.  THANK YOU.

10:38AM 19         (COURT CONCLUDED AT 10:38 A.M.)

20

21

22

23

24

25

1

2

3                         CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         IRENE RODRIGUEZ, CSR, RMR, CRR
           CERTIFICATE NUMBER 8074
17

18
           DATED:  MAY 26, 2020
19

20

21

22

23

24

25