# Exhibit A

1  Hon. Elizabeth D. Laporte (Ret.)
   JAMS
2  Two Embarcadero Center, Suite 1500
   San Francisco, CA 94111
3  Telephone: (415) 982-5267
   Fax: (415) 982-5287
4
5  SPECIAL MASTER

6

7

8
                        UNITED STATES DISTRICT COURT
9
                       NORTHERN DISTRICT OF CALIFORNIA
10
                            SAN JOSE DIVISION
11

12
                                              CASE NO. 5:18-cv-06164-EJD (VKD)
13  IN RE GOOGLE PLUS PROFILE
    LITIGATION                                **REPORT OF SPECIAL MASTER
14                                            RECOMMENDING RECIPIENTS
                                              FOR CY PRES DISTRIBUTIONS**
15

16

17

18

19

20

21         Two applicants timely submitted applications to the Special Master on July 10, 2020

22  requesting a *cy pres* distribution from the Settlement Fund: (1) Stanford Law School's Center for

23  Internet and Society ("CIS") and (2) the Electronic Privacy Information Center ("EPIC").

24  Copies of these applications are attached.  The Special Master has carefully reviewed both

25  applications to determine whether they met the requirements of the Court's Order Granting

26  Preliminary Approval of Class Action Settlement filed on June 10, 2020 and should be selected

27  as *cy pres* recipients.

28

                                          1

1   Each applicant has provided a sworn declaration as required by paragraph 10 of the

2   Order.[1]  Neither entity is subject to a conflict that would raise substantial questions about

3   whether its selection was made on the merits or render it unsuitable as a recipient.  According to

4   their declarations, neither has any financial or other connection to any of the named class

5   plaintiffs, Judge Davila or the Special Master. Two CIS directors previously represented

6   Defendants when in private practice, but neither has done so since leaving private practice

7   several years ago and neither has any involvement in this case.   The Law School, including CIS,

8   which is under the umbrella organization the Law, Science and Technology Program ("LST"),

9   have received prior donations from Defendants and CIS has received a prior *cy pres* distribution

10  in In re Google Buzz Privacy Litigation, 10-cv-00672 , 2011 WL 7460099 (N.D. Cal. Jun. 2,

11  2011).  Given the prominent role of Stanford Law school in Silicon Valley and the focus of LST

12  and CIS on technology, privacy and security, the receipt of prior donations from Google does not

13  raise any concern that CIS would be biased in its use of *cy pres* funds.  Indeed, its receipt of a

14  prior *cy pres* distribution supports its suitability.   Supporting its independence, EPIC has

15  previously filed amicus briefs adverse to Google, and received *cy pres* funds in two settlements

16  paid by Google, the one cited above that CIS also participated in, and In re Google LLC St. View

17  Elec. Commc'ns Litig., No 10-MD-02184, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020).

18  Both applicants have agreed to use *cy pres* funds for the intended purpose and are well

19  positioned and therefore highly likely to do so effectively.  Each has a well-established and

20  impressive track record of effectively promoting public awareness and education and/or

21  supporting research, development and initiatives, related to the security and/or privacy of internet

22  browsers.  CIS was founded 20 years ago.  A key concern of CIS has been consumers' privacy

23  expectations and understanding in their use of the internet and social networks, and third-party

24  _____

25  [1] While CIS did not identify a state of registration as would otherwise be required generally of nonprofit public benefit corporations, educational institutions appear to be excepted.  See, e.g., California Department of

26  Justice Charitable Trusts Section, Attorney General's Guide for Charities: Best practices for nonprofits that operate or fundraise in California.

27

28

1   data access, as well as data security.  For example, CIS's Director of Consumer Privacy, Dr.

2   Jennifer King, has focused her research on this topic, including improving online notice and

3   consent for personal information disclosures and education of consumers.  CIS would use the

4   funds to support her research, and potentially to hire additional research fellows and students to

5   work on internet privacy and security, as well as to educate users such as the plaintiff class.  As

6   its name suggests, EPIC has focused for more than two decades on safeguarding the privacy of

7   internet users in a variety of forums, including invoking government scrutiny of privacy

8   violations, filing amicus briefs in support of stronger internet privacy safeguards and remedies,

9   and providing information and education to the public on these issues through its website and

10  biweekly newsletter.

11          Accordingly, the Special Master recommends that CIS and EPIC each be designated to

12  receive its pro rata share of the *cy pres* funds.   As no other applications were received, none

13  were rejected.

14

15  Dated:  July 15, 2020

DocuSigned by:

_____

HON. ELIZABETH D. LAPORTE (RET.)

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENTS

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE GOOGLE PLUS PROFILE LITIGATION | Case No. 3:18-cv-06164-EJD (VKD) |
| | **CLASS ACTION** |
| | **APPLICATION TO RECEIVE A *CY PRES* DISTRIBUTION** |

The Electronic Privacy Information Center ("EPIC") respectfully submits the following

application to receive a *cy pres* distribution from the Settlement Fund in the above captioned

matter. In support of this application, EPIC has included sworn statements below that conform

with the requirements laid out in the Court's June 10, 2020, Order Granting Preliminary

Approval of Class Action Settlement, Dkt. No. 13, at ¶¶ 10(a)–(e).

**DECLARATION OF ALAN JAY BUTLER**

I, Alan Jay Butler, Interim Executive Director and General Counsel of the Electronic

Privacy Information Center, do hereby declare as follows:

**About EPIC**

EPIC is one of the leading consumer privacy organizations in the United States. EPIC is a

District of Columbia not-for-profit corporation with a principal address of 1519 New Hampshire

Avenue NW, Washington, DC 20036. Established in 1994 to focus public attention on emerging

privacy issues, EPIC has led numerous campaigns to safeguard the privacy of Internet users in

general and users of Google's services in particular. EPIC advocates for consumer privacy

through comprehensive complaints to the Federal Trade Commission ("FTC") and the Federal

Communications Commission ("FCC"), amicus briefs in federal and state courts, testimony and

statements to Congressional committees, and educational publications including privacy reference books and issue pages on EPIC's website.

EPIC is "well-suited to be a *cy pres* recipient in [a] privacy case." *Perkins v. Linkedin Corp.*, No. 13-cv-4303, 2016 WL 613255, at *11 (N.D. Cal. Feb. 16, 2016). As required by the *cy pres* doctrine in privacy class actions, EPIC is aligned with the interests of class members and the underlying purpose of the litigation.

### EPIC's Work to Protect the Interests of Class Members

EPIC's long-running efforts to safeguard the privacy of Internet users—particularly from invasive business practices deployed by Google—provide a compelling basis to designate EPIC as a *cy pres* recipient in this matter.

From its beginnings, EPIC has worked to protect online privacy. In 1997, EPIC conducted a comprehensive privacy audit of the 100 most frequently visited websites to determine "whether sites collected personal information, had established privacy policies, made use of cookies, and allowed people to visit without disclosing their actual identity." EPIC, *Surfer Beware: Personal Privacy and the Internet* (1997).[1] EPIC published the resulting report on its website, which warned that "Protecting privacy will be one the greatest challenges for the Internet. Until clear practices are established and good policies put in place, our advice is simply this: 'Surfer beware.'"[2]

Since then, as the risks to Internet users have evolved, EPIC has led the way in protecting online privacy and keeping the public informed. Through its website, epic.org, EPIC has organized numerous public education campaigns around key online privacy issues, including

---

[1] https://epic.org/reports/surfer-beware.html.
[2] *Id.*

anonymity, EPIC, *Internet Anonymity*;[3] big data and cloud computing, EPIC, *Big Data and the Future of Privacy*;[4] EPIC, *Cloud Computing*;[5] children's privacy, EPIC, *Children's Online Privacy Protection Act (COPPA)*;[6] consumer profiling, EPIC, *Privacy and Consumer Profiling*;[7] identity theft, EPIC, *Identity Theft*;[8] the Internet of Things, EPIC, *Internet of Things* (IoT);[9] search engine privacy, EPIC, *Search Engine Privacy*;[10] and social networking privacy, EPIC, *Social Networking Privacy*.[11]

EPIC has focused special attention on alerting the public to privacy violations by Google. In 2004, EPIC first raised the alarm about Google's scanning of private emails through its nascent Gmail service and called on the California Attorney General to investigate. Letter from EPIC et al. to Bill Lockyer, Cal. Atty. General (May 3, 2004).[12] In 2010, EPIC filed a complaint with the FCC urging a probe of Google's use of its Street View vehicles to collect Wi-Fi data. Letter from Marc Rotenberg, Executive Director, EPIC, to Julius Genachowski, Chairman, Fed. Commc'ns Comm'n (May 18, 2010).[13] EPIC's complaint was instrumental in bringing about investigations of Google Street View by the FCC, FTC, and U.S. Department of Justice. *See* EPIC, *Investigations of Google Street View*.[14]

Also in 2010, EPIC filed a complaint with the FTC calling for an investigation of Google Buzz, which had "convert[ed] the private, personal information of Gmail subscribers into public

---

[3] https://www.epic.org/privacy/anonymity/.
[4] https://www.epic.org/privacy/big-data/.
[5] https://www.epic.org/privacy/cloudcomputing/.
[6] https://www.epic.org/privacy/kids/default.html.
[7] https://www.epic.org/privacy/profiling/default.html.
[8] https://www.epic.org/privacy/idtheft/.
[9] https://www.epic.org/privacy/internet/iot/.
[10] https://www.epic.org/privacy/search-engine/.
[11] https://www.epic.org/privacy/socialnet/.
[12] https://www.epic.org/privacy/gmail/agltr5.3.04.html.
[13] https://epic.org/privacy/cloudcomputing/google/EPIC_StreetView_FCC_Letter_05_21_10.pdf.
[14] https://epic.org/privacy/streetview/.

information for the company's social network service[.]" EPIC, *Complaint, Request for Investigation, Injunction, and Other Relief* (2010).[15] In 2011, the FTC issued a Consent Order against Google imposing new privacy safeguards on the company's business practices. In 2012, when Google announced that it intended to consolidate user data from across its services and create a single merged profile for each user—in apparent violation of the 2011 Consent Order—EPIC brought suit against the FTC to enforce the Order. *EPIC v. FTC (Enforcement of the Google Consent Order)*.[16]

EPIC routinely files amicus briefs in support of stronger Internet privacy safeguards and remedies for users whose rights are violated. *See, e.g.*, Br. of Amicus Curiae EPIC, *Attias v. CareFirst, Inc.*, No. 19-7020 (D.C. Cir. July 1, 2019) (arguing that companies have a legal duty to reasonably protect consumers' personal data); Br. of Amicus Curiae EPIC, *Herrick v. Grindr LLC*, 765 F. App'x 586 (2d Cir. 2019) (arguing that social media platforms are subject to suit when they fail to address online abuse of their users); Br. of Amicus Curiae EPIC, *In re Facebook Internet Tracking Litig.*, No. 17-17486 (9th Cir. June 26, 2018) (arguing that Facebook bears the burden of protecting consumers from unwanted online tracking); Br. of Amicus Curiae EPIC, *Campbell v. Facebook*, Inc., No. 17-16873 (9th Cir. Feb. 1, 2018) (arguing that class action settlements fail to protect consumers when they do not force companies to change their privacy-invasive business practices); Br. of Amicus Curiae EPIC, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) (arguing that consumers have Article III standing to sue under the Video Privacy Protection Act when their legal rights are violated); Br. of Amicus Curiae EPIC, *hiQ Labs, Inc. v. LinkedIn Corp.*, No. 17-16783 (9th Cir. Oct. 10, 2017) (arguing that a lower court wrongly ordered the disclosure of LinkedIn users' personal data to a third-party company);

---

[15] https://epic.org/privacy/ftc/googlebuzz/GoogleBuzz_Complaint.pdf.
[16] https://epic.org/privacy/ftc/google/consent-order.html.

Br. of Amicus Curiae EPIC, *Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017) (arguing that data breach victims have Article III standing to sue); Br. of Amicus Curiae EPIC, *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017) (arguing that consumers have Article III standing to sue under the Cable Communications Policy Act when their legal rights are violated).

In particular, EPIC has filed multiple amicus briefs in cases arising from Google's violations of privacy. Br. of Amicus Curiae EPIC, *Frank v. Gaos*, 139 S. Ct. 1041 (2019) (arguing, in a case concerning Google's misuse of referrer headers, that courts must ensure the fairness of consumer class action settlements); Br. of Amicus Curiae EPIC, *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, No. 17-1480 (3d Cir. Nov. 22, 2017) (arguing that a lower court wrongly approved a consumer class action settlement that would allow Google to continue unlawfully tracking users); Br. of Amicus Curiae EPIC, *Marquis v. Google*, No. SJC-12103 (Mass. 2016) (arguing that Google's scanning of private Gmail messages violated a state prohibition on wiretapping); Br. of Amicus Curiae EPIC, *Ben Joffe v. Google*, 746 F.3d 920 (9th Cir. 2013) (urging the court to uphold legal protections for Wi-Fi communications); Br. of Amicus Curiae EPIC, *In re Google Street View*, 794 F. Supp. 2d 1067 (N.D. Ca. 2011) (arguing that intercepting data from Wi-Fi networks violated the federal Wiretap Act).

EPIC also provides regular testimony to Congress and statements to federal agencies concerning the privacy and rights of Internet users. *See, e.g.*, Statement from EPIC to U.S. Senate Comm. on Judiciary (July 16, 2019) (concerning alleged search engine censorship);[17] Statement from EPIC to U.S. House Comm. on Judiciary (Dec. 10, 2018) (concerning Google's data collection, use, and filtering practices);[18] Statement from EPIC to U.S. Senate Comm. on Commerce, Sci., & Tech., arguing (that "the failure of the United States to address the growing

---

[17] https://epic.org/testimony/congress/EPIC-SJC-GoogleCensorship-Jul2019.pdf.
[18] https://epic.org/testimony/congress/EPIC-HJC-GoogleOversight-Dec2018.pdf.

concerns about online privacy is threatening both the digital economy and democratic institutions").[19]

EPIC's work reaches a wide audience through epic.org, one of the top-ranked privacy websites in the world. EPIC also publishes a biweekly newsletter, the EPIC Alert, that reaches thousands of subscribers. EPIC, *EPIC Alert* (2020).[20] EPIC is routinely cited in news reports on emerging consumer privacy issues, including more than 380 reports about Google's privacy issues from nationwide publications such as the New York Times, the Wall Street Journal, the Washington Post, the San Francisco Chronicle, USA Today, NBC, ABC, Fox News, NPR, Reuters, and the Associated Press. EPIC, *EPIC in the News* (2020).[21] On EPIC's homepage, where EPIC posts regular updates about ongoing efforts to protect privacy, Google's name has appeared more than 1,500 times since 2004. EPIC, *Previous Top News* (2020).[22]

### EPIC's Suitability for a *Cy Pres* Distribution

In a class action settlement involving the distribution of funds to *cy pres* beneficiaries, the Court has an obligation to make an independent determination about the fairness and adequacy of the proposed settlement. As the Ninth Circuit has explained,

> Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary. To avoid the "many nascent dangers to the fairness of the distribution process," we require that there be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Nachshin,* 663 F.3d at 1038. A *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," *id.* at 1039, and must not benefit a group "too remote from the plaintiff class," *Six Mexican Workers,* 904 F.2d at 1308. Thus, in addition to asking "whether the *class settlement,* taken as a whole, is fair, reasonable, and adequate to all concerned," we must also determine "whether the *distribution* of the approved class settlement complies with our standards governing *cy pres* awards." *Nachshin,* 663 F.3d at 1040 (internal quotation marks omitted).

---

[19] https://epic.org/testimony/congress/EPIC-SCOM-InternetGovernance-July2018.pdf.
[20] https://epic.org/alert/.
[21] https://epic.org/news/.
[22] https://epic.org/news/2020/.

*Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).

EPIC satisfies the two key requirements for a distribution of *cy pres* funds in a consumer privacy case: (1) EPIC is aligned with the interests of class members and (2) EPIC advances the aims of the underlying litigation. EPIC has spent more than two decades advocating for online privacy safeguards that are aligned with the interests of the class members. And EPIC continues to advocate and act as a champion for the privacy rights of Internet users.

Accordingly, courts have approved EPIC as a *cy pres* recipient in many consumer privacy cases. In *Perkins v. LinkedIn Co.*, No. 13- 4304, 2016 WL 613255 (N.D. Cal. Feb. 16, 2016), the court found that EPIC is a "well-established and respected organization within the field of internet privacy" and is thus "well-suited to be a *cy pres* recipient." In *In re Google Buzz Privacy Litigation*, No. 10-cv-672, 2011 WL 7460099 (N.D. Cal. June 2, 2011), Judge Ware modified a proposed settlement to include EPIC as a *cy pres* beneficiary given that there was no "good cause to exclude EPIC from the list of recipients." *Id*. at * 1. EPIC has also been approved to receive distributions in cases including:

- *Picchi v. Comenity Bank*, No. 11-61797 (S.D. Fla.)

- *Perkins v. LinkedIn Corp.*, No. 13-4304 (N.D. Cal.)

- *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners*, LLC, No. 11-2467 (D. Md.)

- *Legg v. Laboratory Corp.*, No. 14-61543 (D. Md.)

- *Ashley Madison Consumer Data Sec. Breach Litig.*, No. 15-MD-2669 (E.D. Mo.)

More examples can be found at https://epic.org/cy-pres.

If EPIC is designated as a *cy pres* recipient, EPIC agrees to devote any funds from the Settlement to promote public awareness and education and to support research, development, and

7

initiatives related to the security and privacy of Internet browsers. EPIC will use the *cy pres*

funds to support its work to protect the privacy rights of consumers. EPIC will inform consumers

of emerging privacy risks. EPIC will advocate for consumers at the FTC, FCC, in the courts, and

in Congress. This work includes the preparation of detailed comments for federal agencies,

testimony and statements for Congressional committees, and amicus briefs for federal and state

courts. EPIC will publish leading resources for consumers, such as the *Privacy Law*

*Sourcebook*.[23] EPIC will continue to make useful information available on our website, epic.org.

EPIC has an expert staff of with eight attorneys specializing in privacy-related issues,

including members of the bars of California, D.C., Massachusetts, and New York. EPIC's

attorneys are also barred in most of the federal appellate courts in the United States, as well as

the Supreme Court of the United States.

EPIC is also widely recognized for good management practices and effective use of

funding received. EPIC receives top marks from the leading evaluators of non-profit practices,

Charity Navigator ("Four Stars") and Network for Good ("Gold"), for accountability and

transparency. In 2019, EPIC directed 87% of revenue to program activities.

To maintain its independence, EPIC also receives no funding from any company. That

makes *cy pres* awards to EPIC particularly appropriate as there is no conflict with any potential

defendant in a consumer privacy matter.

The undersigned has inquired into the existence of any relationships between EPIC and

Magistrate Judge Elizabeth LaPorte, Judge Edward J. Davila, the named parties, or any attorney

of any of the named parties. The undersigned has no reason to believe any such relationships

exist, except that (1) EPIC has previously filed amicus briefs adverse to Google in cases in which

---

[23] Privacy Law Sourcebook (Marc Rotenberg ed. 2018), *available at* https://epic.org/bookstore/pls2018/.

Google was a defendant; and (2) EPIC has previously been designated to receive *cy pres* funds

from two class action settlements paid by Google:

- Settlement in *In re Google Buzz User Privacy Litigation,* No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011)

- Settlement in *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184- CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)

### Conclusion

As set out above, EPIC has fought to protect the privacy of Internet users for more than

two decades. EPIC has pursued this work diligently, purposefully, and fairly. EPIC is clearly

aligned with purpose of the litigation and the interests of the class members. Accordingly, EPIC

respectfully asks to be designated as one of the *cy pres* recipients in this matter. If necessary, the

undersigned will testify on the above topics at the hearing on the motion for final approval of the

Settlement.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July

9, 2020.

05/27/2020

_____
ALAN JAY BUTLER
Interim Executive Director
General Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1519 New Hampshire Ave NW
Washington, D.C. 20036
Telephone: (202) 483-1140
Facsimile: (202) 483-1248
Email: butler@epic.org

Jennifer King, Ph.D
Director of Consumer Privacy
Center for Internet & Society (CIS)
559 Nathan Abbott Way
Stanford, CA 94305-8610
jenking@law.stanford.edu

July 10, 2020

**Re: Proposal for Distribution of *Cy Pres* Funds to Stanford Law School's Center for Internet and Society in *In re: Google Plus Profile Litigation*, No. 5:18-cv-06164-EJD**

Dear Judge Laporte:

By way of this letter, the Stanford Law School's Center for Internet and Society (CIS) is seeking distribution of *cy pres* funds to CIS in *In re: Google Plus Profile Litigation*, Case No. 5:18-cv-06164-EJD. CIS thanks the Court for the opportunity to submit this proposal for consideration in the proposed settlement of this litigation. CIS has a long history of consumer privacy and security research and analysis that benefits consumers affected by circumstances such as those in the *Google Plus Profile* case. CIS seeks a pro rata share of the proposed class settlement amount, which would directly support the privacy and security research projects we detail below.

## Part I: Introduction

### About the Center for Internet and Society

CIS is a public interest technology law and policy program and a part of the Law, Science and Technology Program at Stanford Law School. The Center is led by Faculty Director Professor Barbara van Schewick, and has seven staff members: Associate Director Elaine Adolfo; Director of Privacy Albert Gidari; Director of Consumer Privacy Dr. Jennifer King; Associate Director of Surveillance and Cybersecurity Riana Pfefferkorn; the Hon. Stephen Wm. Smith (ret.), Director of Fourth Amendment and Open Courts; Media and Strategy Fellow Ryan Singel; and Legal Assistant Amanda Avila. In addition to our Faculty Director and staff members, CIS has affiliate scholars and non-residential fellows who dedicate substantial research efforts to privacy and other civil liberties, cybersecurity, and other topics. They contribute to our blog, events, and publications and are listed here: <https://cyberlaw.stanford.edu/about/people>.

Our address and contact information is:

Center for Internet and Society
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
650-736-8675
https://cyberlaw.stanford.edu

**History of CIS**

CIS has been in existence for 20 years. Founded in 2000, CIS is a non-profit organization that works to improve technology law and policy through ongoing interdisciplinary study, analysis, research and discussion. CIS brings together scholars, academics, legislators, students, programmers, security researchers and scientists to study the interaction of new technologies and the law. CIS strives to inform the design of both technology and law in furtherance of important public policy goals such as privacy, free speech, innovation and scientific inquiry.

**CIS's Mission**

CIS's goal is to improve technology law and policy through ongoing interdisciplinary study, analysis, research and discussion. We have ongoing work in the areas of privacy, government surveillance, encryption and cybersecurity policy, and network architecture and public policy. Because the impact of technology on privacy and consumers continues to be a critical component of our mission, we are seeking funding for continued support of our work in Internet privacy and security. In order to engage in the current and future policy questions that arise in these areas, especially with regard to technology impacts, CIS collaborates with the broader Stanford University and Silicon Valley communities to produce high quality research, analysis, arguments and tools for stakeholders seeking to understand, promote and protect civil liberties and the public interest.

**Relevance of Our Work to *In re: Google Plus Profile Litigation***

Consumers' privacy expectations with regard to their personal information long have been a key focus of CIS's research interests. CIS's consumer privacy work enables Internet users, including the Plaintiff Class, to better understand how online service providers collect, store, use, and share their information online, and to make educated choices about the privacy impact of their online activities. These educational efforts go to the heart of cases like *Google Plus,* where Google+ users' personal profile information was exposed to third parties without their knowledge or consent.

CIS's Director of Consumer Privacy, Dr. Jennifer King, has long focused her research on documenting and understanding consumers' knowledge and expectations of privacy in their personal information on the Internet, and she is a known expert on this topic. She regularly provides policy guidance on these issues to elected officials and regulatory bodies in the U.S. and abroad.

This case raises specific issues of third-party access to consumers' personal data, a topic about which Dr. King has published multiple research studies and continues to investigate. For example, in 2011, Dr. King published a study examining social networking users' comprehension of and expectations of privacy with the types of mechanisms (third-party data access via APIs, albeit on Facebook) directly at issue in this litigation. She subsequently published research in 2012 exploring the same third-party data access issues of individuals' personal information on mobile devices. This line of research continues to inform her work today; presently, she is conducting a study examining the California Consumer Privacy Act's impact on the design of privacy notices and consumers' understanding of and expectations regarding their new CCPA rights. She is also leading a project focused on improving the state of online notice and consent for personal information disclosures.

To provide additional examples of CIS's long history of consumer privacy projects and research over the past decade, our Notice by Design project applied human-computer interaction research and experimentation to the problem of giving consumers effective notice of online privacy practices. This widely-discussed research, referenced in *The New York Times* and *The New York Times Magazine*, leveraged legal expertise in privacy with post-graduate research in user interface design. Some of its central insights, for example the idea of "visceral notice," have been implemented by household-name Internet companies, positively affecting user privacy in relation to products we use every day. CIS's "Privicons" project provided users with a simple approach to expressing how they want their email to be treated by the recipient. Developed through an international collaboration among lawyers, privacy researchers, computer scientists, and designers based at Stanford and in Europe, the Privicons plugin for the Google Chrome web browser gave users a set of icons accompanied by short descriptions (such as "Please Share" and "Delete After Reading") that clearly communicate email senders' privacy expectations. CIS researchers also were at the forefront of developing both the W3C standard and browser tools for implementing "Do Not Track" signals in Internet browsers in order to provide consumers with the ability to visit websites without being tracked by third parties.

CIS also is well-known for its competence in cybersecurity law and policy. Our work in this area has focused on educating law students, businesses, legislators, the public, and the courts about both technical aspects of cybersecurity and the policy implications of different regulatory options. This work is collected on our website at <http://cyberlaw.stanford.edu/our-work/topics/cybersecurity>.

We also educate the next generation of lawyers, software developers, and entrepreneurs. Director Gidari teaches Stanford Law School's Information Privacy course, a three-hour class drawing on expertise in privacy law gained during his decades in private practice. Since the spring of 2017, CIS personnel have collaborated with professors from other disciplines to co-teach courses on cybersecurity to law students, undergraduates, and graduate students, covering basic computer, network, and information security from a technology, law, policy, and business perspective. The most recent class, taught in Fall 2019 by Director Pfefferkorn and cybersecurity expert Alex Stamos, comprised around 120 students, mostly from non-computer science backgrounds. The course taught students how Internet browsers work, how attackers compromise online security, and about relevant federal and state privacy and data security laws, including the California Customer Records Act at issue in the instant litigation.

**Part II: Existing and Proposed Projects to be Funded by the *Cy Pres* Award**

CIS agrees to devote any funds received as a result of the *cy pres* award to promote public awareness and education and to support research, development, and initiatives relating to the privacy issues of concern in this case, as well as to Internet browser privacy and security more generally. Specifically, CIS seeks a *pro rata* share of the proposed class settlement amount to continue its privacy and security research for one or more consumer privacy and security projects, including salary for staff working on these issues.

The funds would specifically support Dr. King's public interest privacy research, as described above, as well as potentially enable us to hire additional research fellows and students to work on both Internet privacy and security projects. This research would benefit the Plaintiff Class by supporting both empirical research and policy analysis into the privacy expectations of users such as the Plaintiffs, as well as examinations of the data collection and usage practices of online service providers such as Defendants. It would allow us to pursue education and outreach opportunities to help users such as the Plaintiff Class to manage their privacy and security online,

and to develop policy recommendations that would advance the online privacy and security interests of consumers, including the Plaintiff Class.

## Part III: Potential Conflicts

Stanford Law School's development department researched any connections CIS, its umbrella organization the Law, Science and Technology Program (LST), or Stanford Law School might have with the Class Plaintiffs, the Defendants, their respective attorneys, Judge Davila, or Special Master Judge Laporte.

Stanford Law School, LST, and CIS have no financial or other connections with any of the named Class Plaintiffs. The Law School, LST, and CIS have no financial or other connections with Judge Davila or Judge Laporte. The Law School, LST, and CIS have previously received donations and/or *cy pres* monies from Defendants. Specifically, the Law School has received donations totalling $6,031,339.49 from Defendants. CIS received $4,758,320 from these donations. In 2011, CIS received a *cy pres* distribution in the amount of $511,199.49 in *In re Google Buzz Privacy Litigation*, No. 10-cv-00672 (N.D. Cal.).[1] Neither the Law School nor LST has received any *cy pres* distributions from Defendants.

Stanford Law School, LST, and CIS have no financial connections with the Defendants' Counsel. CIS Directors Gidari and Pfefferkorn previously represented Defendants in various matters while in private practice. Pfefferkorn was an associate at Defendants' Counsel's law firm, where she worked with several of the attorneys for Defendants. However, neither Gidari nor Pfefferkorn has represented Google since leaving private practice several years ago, and they have had no involvement with this case.

All funding CIS receives is deposited into an account or accounts controlled by Stanford Law School. Stanford Law School is fiscally responsible for and monitors the account or accounts. CIS follows all law school and University policies and procedures for expending funds from our accounts.

Research at CIS, Stanford Law School, and Stanford University is driven by faculty interest, initiative and direction. Stanford has strict guidelines for maintaining its academic autonomy and research integrity. Stanford policies provide explicit protection against sponsors who might seek to direct research outcomes or limit the publication of research. Both as a matter of its deep commitment to the integrity of its scholarship and of Stanford University policy, CIS adheres to these policies. All donors to the Center agree to give their funds as unrestricted gifts. When we receive grants from foundations, we spend the money in accordance with the budget proposed in the grant application, and we report to the foundation on the results or accomplishments we obtained as a result of any efforts supported by that funding.[2]

In sum, CIS does not accept grants, donations, or any other support that would limit our ability to conduct our research or any other work we do free of outside influence.

I am willing to testify regarding the foregoing at the motion for final approval of the Settlement.

---

[1] CIS was also one of the approved *cy pres* recipients in the settlement of *In re Google Referrer Header Privacy Litigation*, No. 10-cv-04809-EJD, before Judge Davila, until the Supreme Court vacated the settlement last year.
[2] Salary, research support, and travel for CIS Faculty Director Barbara van Schewick is funded through the general budget of the law school and is independent of CIS. CIS does not accept corporate funding for its network neutrality-related work.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Berkeley, California, on July 10, 2020.

By:

Dr. Jennifer King
Director of Consumer Privacy
Center for Internet and Society
Stanford Law School

**PROOF OF SERVICE BY E-Mail**

Re: In Re Google Plus Profile Litigation
Reference No. 1100108876

I, Sandra Chan, not a party to the within action, hereby declare that on July 16, 2020, I served the attached

REPORT OF SPECIAL MASTER RECOMMENDING RECIPIENTS FOR CY PRES DISTRIBUTIONS on the

parties in the within action by electronic mail at San Francisco, CALIFORNIA, addressed as follows:

John A. Yanchunis Esq.
Ryan J. McGee Esq.
Morgan & Morgan, PA
One Tampa City Center
201 N. Franklin St., 7th Floor
Tampa, FL   33602
Tel: 813-275-5272
Email: jyanchunis@forthepeople.com
mcgee@forthepeople.com
   Parties Represented:
   Matt Matic
   Zak Harris

Clayeo C. Arnold Esq.
Joshua H. Watson Esq.
Arnold Law Firm
865 Howe Ave
Suite 300
Sacramento, CA   95825
Tel: (916) 924-3622
Email: carnold@justice4you.com
jwatson@justice4you.com
   Parties Represented:
   Matt Matic
   Zak Harris

Franklin D. Azar Esq.
Margeaux R. Azar Esq.
Franklin D. Azar & Associates, PC
14426 E. Evans Ave.
Aurora, CO   80014
Tel: 303-757-3300
Email: azarf@fdazar.com
azarm@fdazar.com
   Parties Represented:
   Charles Olson
   Eileen M. Pinkowski

Maura L. Rees Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Rd.
Palo Alto, CA   94304
Tel: 650-320-4780
Email: mrees@wsgr.com
   Parties Represented:
   Google, Inc.

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco,

CALIFORNIA on July 16, 2020.

_____
Sandra Chan
JAMS
SChan@jamsadr.com