JOHN A. YANCHUNIS (*pro hac vice*)
jyanchunis@forthepeople.com
RYAN J. McGEE (*pro hac vice*)
rmcgee@forthepeople.com
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone:   (813) 223-5505
Facsimile:   (813) 223-5402

Clayeo C. Arnold, SBN 65070
carnold@justice4you.com
Joshua H. Watson, SBN 238058
jwatson@justice4you.com
**CLAYEO C. ARNOLD
A PROFESSIONAL LAW
CORPORATION**
865 Howe Avenue
Sacramento, California 95825
Telephone:   (916) 777-7777
Facsimile:   (916) 924-1829

FRANKLIN D. AZAR (*pro hac vice*)
azarf@fdazar.com
MARGEAUX R. AZAR (*pro hac vice*)
azarm@fdazar.com
**FRANKLIN D. AZAR & ASSOCIATES, P.C.**
14426 East Evans Avenue
Aurora, Colorado 80014
Telephone:   (303) 757-3300
Facsimile:   (720) 213-5131

*Appointed Class Counsel*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE GOOGLE PLUS PROFILE LITIGATION | No. 5:18-CV-06164-EJD (VKD) |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Date:          November 19, 2020 |
| | Time:          9:00 a.m. |
| | Courtroom:   4, 5th Floor |
| | Judge:         Hon. Edward J. Davila |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND .................................................................................................2

        A.      The First Data Leak ................................................................................2

        B.      The Second Data Leak ...........................................................................2

        C.      Litigation History ..................................................................................3

        D.      Settlement Negotiations .........................................................................4

III.    THE SETTLEMENT TERMS.............................................................................4

        A.      The Preliminarily Approved Settlement Class .......................................4

        B.      Business Practice Changes.....................................................................5

        C.      Settlement Fund .....................................................................................5

        D.      Class Notice and Settlement Administration ..........................................6

        E.      Service Awards to Named Plaintiffs & Attorneys' Fees, Costs, and
                Expenses ................................................................................................6

        F.      Reduction or Residual............................................................................7

        G.      Release ...................................................................................................7

IV.     NOTICE IMPLEMENTATION ..........................................................................7

V.      CLASS REACTION ...........................................................................................8

VI.     ARGUMENT ......................................................................................................8

        A.      The Settlement Class Should Be Finally Certified ................................8

                1.      The Rule 23(a) Requirements Are Met.......................................9

                2.      The Requirements of Rule 23(b) Are Met ................................10

        B.      The Settlement Should be Finally Approved........................................11

                1.      Rule 23(e) Analysis.................................................................11

                2.      The District's Procedural Guidance Regarding Final Approval...............13

                3.      Ninth Circuit Final Approval Factors ......................................15

        C.      The Notice Plan Met the Requirements of Due Process........................16

        D.      Final Appointment of Settlement Class Counsel ..................................17

1

VII.    CONCLUSION...................................................................................................18

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**                                                              **PAGE(S)**

3

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................8, 10

4

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ...................................................8

5

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................................9

6

7

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018)................................8, 10

8

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)................................12

9

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) .........................................10

10

11

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,
    No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019)...........................................................10

12

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) .........................................................9, 10

13

*Matic, et al v. Google, Inc.*, No. 5:18-cv-06164-EJD (N.D. Cal. 2018) ........................................3

14

*Olson, et al v. Google, Inc.*, No. 5:18-cv-06365-NC (N.D. Cal. 2018) ........................................3

15

*Parsons v. Kimpton Hotel & Rest. Group, LLC*,
    No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019) ................................................................10

16

17

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .....................................................................9

18

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) .........................................................10

19

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................................9

20

**STATUTES, RULES, AND REGULATIONS**                             **PAGE(S)**

21

Class Action Fairnes Act, 28 U.S.C. § 1715, *et seq.* ...................................................................12

22

Fed. R. Civ. P. 23 ............................................................................................... *passim*

23

**PUBLICATIONS**                                                            **PAGE(S)**

24

Manual for Complex Litigation (4th Edition)................................................................................8

25

26

27

28

## I.      INTRODUCTION

This Settlement brings meaningful resolution to Settlement Class Members:[1] the information they provided to Google via its now-shuttered social media platform is no longer available to third parties and has been removed from Google's servers, and they are eligible to receive compensation from the Settlement Fund. Following preliminary approval of the parties' Settlement on June 10, 2020, (Dkt. No. 71), as well as the associated robust Notice plan, Plaintiffs—as representative for the class—now move for final approval of the Settlement.

The response from the Settlement Class has been positive and engaged: as of October 15, 2020, approximately 1,820,549 claims have been submitted; approximately 49,749 exclusions have been requested; and approximately 761 objections have been lodged.[2] *See* Declaration of Jenny Shawver, ¶¶ 8–10, attached hereto as **Exhibit 1**, hereinafter "Shawver Decl." The administration of claims has not commenced, but based on past administration of class action claims settlements, the total number of claims is expected to decrease through identification of duplicates, incomplete forms, and other deficiencies.

Accordingly, Plaintiffs respectfully request the Court enter an order that: (1) finally approves the Settlement Agreement and Release as fair, reasonable, and adequate under Rule 23(e); (2) finally certifies the Settlement Class under Fed. R. Civ. P. 23(b)(2) and (b)(3); (3) finally appoints Matt Matik, Zak Harris, Charles Olson, and Eileen M. Pinkowski as Class Representatives; (4) finally appoints as Class Counsel: John A. Yanchunis and Ryan J. McGee of the law firm Morgan & Morgan Complex Litigation Group; Clayeo C. Arnold and Joshua H. Watson of the law firm Clayeo C. Arnold Professional Law Corporation; and Franklin D. Azar and Margeaux R. Azar of the law firm Franklin D. Azar & Associates, P.C.; (5) finds the Notice plan as implemented satisfies Rule 23 and due process; (6) finally appoints Angeion Group

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release ("Settlement Agreement" or Settlement") (Dkt. No. 57-2).

[2] As explained, *infra*, a substantial number of submitted objections consisted only images, without any contact information, bases for objection, or attestations, wholly failing to comply with Rule 23(e). Additionally, duplicate objections were submitted. The final, raw numbers are provided herein; however, to address the nature of objections, Plaintiffs rely on this refined figure.

("Angeion") as the Settlement Administrator; and (7) grants further relief as the Court deems just and proper.

## II.   BACKGROUND

### A.   The First Data Leak

On October 8, 2018, Google suddenly announced it would permanently shutter its Google+ social media platform; within that announcement, Google disclosed that a "software glitch" had allowed third-party application developers access to Google+ users' Personal Information in profile fields between 2015 and March 2018 (the "First Data Leak"). ¶ 27.[3] In announcing the First Data Leak, Google explained that while users could grant third party applications access to their Personal Information in profile fields, a "glitch" or "bug" in Google's Application Program Interfaces ("API") allowed third-party applications to access that Personal Information without the Google+ users' permission. ¶ 28.[4] In other words, the First Data Leak made it possible for third parties to access users' Personal Information in profile fields without permission. The information substantiating the First Data Leak was, however, known to Google since March 2018, yet Google took approximately seven months to disclose it to the public. ¶ 32. The First Data Leak affected an unknown number of users, with potentially 438 third-party developers able to access that Personal Information. ¶ 33.

### B.   The Second Data Leak

On December 10, 2018, Google announced that it would accelerate the closing of Google+ from August 2019 to April 2019 due to another "glitch" or "bug" that permitted the Personal Information in profile fields of several million users in the United States to be shared with third-party developers (the "Second Data Leak"). ¶ 50. The Second Data Leak resulted from Google's

---

[3] References to "¶" or "¶¶" are to the Complaint, unless otherwise noted.

[4] Douglas MacMillan & Robert McMillan, *Google Exposed User Data, Feared Repercussions of Disclosing to Public*, The Wall Street Journal (Oct. 8, 2018), available at https://www.wsj.com/articles/google-exposed-user-data-feared-repercussions-ofdisclosing-to-public-1539017194; Douglas MacMillan & John McKinnon, *Google to Accelerate Closure of Google+ Social Network After Finding New Software Bug*, The Wall Street Journal (Dec. 10, 2018), available at https://www.wsj.com/articles/google-to-accelerate-closure-of-google-social-network-1544465975.

attempting to fix another vulnerability identified in the Google+ platform, but in turn resulted in exposure of the Personal Information in profile fields to unauthorized third-party developers between November 7, 2018 and November 13, 2018, regardless of the privacy setting the Google+ user set for her or his profile. ¶¶ 50–51.

C.   **Litigation History**

Following Google's announcement of the First Data Leak, Plaintiffs Matt Matic and Zak Harris filed their class action complaint on October 9, 2018 (the "*Matic* Case"). (Dkt. No. 6). Shortly thereafter, Plaintiffs Charles Olson and Eileen Pinkowski filed their class action complaint on October 17, 2018 (the "*Olson* Case"). (Dkt. No. 12). And on December 5, 2018, this Court ordered the *Matic* Case and *Olson* Case related, pursuant to Civil L.R. 3-12. (Dkt. No. 20). On December 11, 2018, following Google's announcement of the Second Data Leak, but before the *Matic* Case and *Olson* Case were consolidated, Plaintiffs Matic and Harris filed their First Amended Class Action Complaint, consolidating the First and Second Data Leaks into this litigation. (Dkt. No. 26). Shortly thereafter, counsel in both the *Matic* Case and *Olson* Case jointly moved for appointment of Interim Lead Counsel, (Dkt. No. 27), and counsel for all parties (i.e., *Matic*, *Olson*, and Google) jointly petitioned the Court to consolidate the cases. (Dkt. No. 30). On January 9, 2019, the Court consolidated the *Matic* Case and *Olson* Case, (Dkt. No. 31), counsel in the *Matic* Case and *Olson* Case convened and filed their consolidated complaint (i.e., the previously-defined Complaint), (Dkt. No. 37), and the Court appointed John A. Yanchunis and Ivy T. Ngo as co-lead counsel. (Dkt. No. 44).

On April 10, 2019, Google moved to dismiss Plaintiffs' Complaint, arguing failure to allege economic or other harms, and failure to allege sufficient factual bases to meet Fed. R. Civ. P. 8, 9, and 12 pleadings standards. (Dkt. No. 45). On May 10, 2019, Plaintiffs responded in opposition to Google's Motion to Dismiss, detailing the sufficiency of their factual and legal allegations in support of equitable and other relief, (Dkt. No. 47), and on May 31, 2019, Google filed its reply to Plaintiffs' opposition. (Dkt. No. 49).

1

**D.      Settlement Negotiations**

2   Following full briefing of Google's Motion to Dismiss, Google's counsel and Co-Lead

3   Counsel discussed the possibility of a mediation in this case, and on August 14, 2019, Interim

4   Class Counsel and Google engaged in an arm's-length, in-person, day-long mediation session

5   under the direction of Mr. Randall Wulff in California. (Dkt. No. 52). During the mediation, the

6   parties agreed to terms forming the substance of the Settlement. Negotiations of attorneys' fees,

7   costs, and expenses did not commence until agreement on behalf of the Settlement Class had been

8   reached. S.A. §§ 9.1, 10; (Dkt. No. 57-5, ¶¶ 4, 15, 16).

9   **III.      THE SETTLEMENT TERMS**

10   **A.      The Preliminarily Approved Settlement Class**

11   The Settlement Agreement will provide relief for the following class that the Court certified

12   for Settlement purposes on June 10, 2020 (Dkt. No. 71):

13
14
15
> All persons residing in the United States who: (1) had a consumer Google+ account
> for any period of time between January 1, 2015, and April 2, 2019; and (2) had their
> non-public Profile Information exposed as a result of the software bugs Google
> announced on October 8, 2018, and December 10, 2018.

16   S.A., § 1.8; (Dkt. No. 71).

17   Because the claims at issue relate to alleged disclosure of private information, the Class is

18   defined to comprise U.S. users who included non-public information in their Google+ profile fields

19   that was exposed due to the Data Leaks. Users meeting the class definition will have the

20   opportunity to submit a claim form affirming that they had non-public information in their

21   Google+ profile fields that was susceptible to the software bugs, either because the user shared the

22   profile information with another Google+ user, or authorized a third-party app to access that

23   information.

24   While the parties do not know the total number of users who meet the class definition,

25   based on available data about the U.S-based accounts that were potentially susceptible to the

26   second bug, it is estimated that under ten million users in the United States had account settings

27   such that information in their profiles could have been exposed by the second bug. As to the First

28   Data Leak, due to the lack of historical records, the total number of potentially affected accounts

during the first bug's existence cannot be conclusively determined.  However, the relatively small number of susceptible accounts at the time of its discovery suggests that the impact of the First Data Leak was significantly smaller than the second bug. Further, the parties do not have sufficient information to determine how many of those users with susceptible accounts had non-public data in profile fields, and thus do not know the exact number of persons contained within the proposed class. This information was provided to the Court in the Plaintiffs' Motion for Preliminary Approval, and no information has been revealed to the contrary. (Dkt. No. 57, § III(A)).

### B.    Business Practice Changes

Following the announcement of the first software bug on October 8, 2018, Google announced its intent to permanently shutter its Google+ consumers social media platform in August 2019. ¶¶ 1, 27, 44; (Dkt. No. 57, § III(B)). Following the announcement of the second software bug on December 10, 2018, Google expedited the shuttering of its Google+ social media platform to April 2, 2019. ¶ 52; (Dkt. No. 57, § III(B)). Because the Google+ consumer social media platform is no longer operative, Plaintiffs did not seek any additional business practice changes because the potential for harm to consumers has been remediated. (Dkt. No. 57-5, ¶ 24).

### C.    Settlement Fund

Google's total financial commitment under the Settlement Agreement is $7,500,000. S.A. §§ 1.48, 2.1. The Settlement Fund will be applied to pay all Notice and Administrative Costs, the taxes described within the Settlement Fund, the Fee, Cost, and Expense Award, and any Service Awards. S.A. § 2.8. The Settlement Fund will also be used to distribute Residual Settlement Payments (if any) to Approved Cy Pres Recipients. S.A. §§ 2.8, 2.12. The Net Settlement Fund will be applied to Claimants in accordance with the Final Approval Order or any subsequent order of the Court. S.A. §§ 2.8, 2.9. The Net Settlement Fund will be allocated to Claimants on a *pro rata* basis up to a cash payment of US $5.00 per Claimant. S.A. §§ 2.8, 2.10. If there are insufficient funds to pay claimants $5.00 based on the number of claimants, the payment to each claimant will be reduced pro ratably. S.A. §§ 2.8, 2.10. If sufficient funds remain after calculation of the aggregate initial maximum distribution of US$5.00 per Claimant, the allocation shall be recalculated on a *pro rata* basis up to a maximum distribution of up to US$12.00 per Claimant.

1 S.A. § 2.10. Any funds remaining in the Net Settlement Fund after distribution(s) to Class

2 Members will be distributed to Cy Pres Recipients that have been selected by a neutral third party

3 and approved by the Court. S.A. §§ 2.8, 2.9. Under no circumstances will any Class Member

4 receive more than $12.00. S.A. § 2.10. Plaintiffs believe the Settlement Fund will be more than

5 ample enough to accommodate the amounts drawn from it, (Dkt. No. 57-5 ¶¶ 22, 30–32), but, in

6 the event it is not, all claims drawn from it will be reduced *pro rata*. S.A. § 2.10.

7        **D.**      **Class Notice and Settlement Administration**

8       Notice to the Settlement Class and the costs of administration will be paid from the

9 Settlement Fund. S.A. § 2.8. Angeion, a nationally recognized and well-regarded class action

10 settlement administrator has been preliminarily approved to provide the settlement notice and to

11 act as settlement administrator. Reflective of the nature of the Settlement Class, email addresses

12 are available for the potential Class Members, and individual notice will be achieved primarily via

13 email sent to the email addresses associated with the accounts of Google+ users in the U.S. as

14 reflected in Google's records. S.A., §§ 4.1, 6.1.1. Notice will also be provided by the creation of a

15 Settlement Website, available at [www.GooglePlusDataLitigation.com](http://www.GooglePlusDataLitigation.com), S.A., § 4.2, as well as via

16 press release, issued through PR Newswire's US1 commercial newswire service and will also be

17 posted on the Settlement Website and Class Counsel's respective firm websites. S.A., §§ 4.2, 4.3.

18 Copies of all the notice documents are attached to this preliminary approval motion; they are clear

19 and concise, and directly apprise Settlement Class Members of all the information they need to

20 know to make a claim. Fed. R. Civ. P. 23(c)(2)(B).

21        **E.**      **Service Awards to Named Plaintiffs & Attorneys' Fees, Costs, and Expenses**

22       Plaintiffs filed their Motion for Attorneys' Fees, Costs, and Expenses and Service Awards

23 on September 28, 2020, which was promptly uploaded to the Settlement Website. (Dkt. Nos. 87,

24 88). In that Motion, Plaintiffs sought $1,500 for each Plaintiff's Service Award, S.A., § 10, and an

25 award of attorneys' fees and reimbursement of litigation costs and expenses amounting to 25% of

26 the Settlement Fund (i.e., $1,875,000), S.A., § 9.1, as well as $200,000 for additional costs. S.A.

27 § 9.1. (Dkt. Nos. 87, 88). Plaintiffs hereby incorporate the arguments contained therein.

28

1

### F.      Reduction or Residual

Importantly, this Settlement is non-reversionary. If the Net Settlement Fund is insufficient to cover the disbursement of $5.00 to each Settlement Class Member, all such claims will be reduced on a *pro rata* basis. S.A., § 2.10. Conversely, should there be a remaining amount, surplus funds will be used to increase the disbursement payments up to the $12.00 individual claim cap, S.A. § 2.10. (Dkt. 57-5, ¶¶ 30–33). If additional funds remain in the Net Settlement Fund following those two disbursements, then a neutral third party appointed by the Court will select a Cy Pres recipient or recipients, subject to this Court's approval. S.A. §§ 2.10, 2.12.

### G.      Release

In exchange for the benefits provided under the Settlement Agreement, Settlement Class Members will release any claims against Google related to or arising from any of the facts alleged in the complaints filed in this litigation. S.A., §§ 7.1–7.6; (Dkt. No. 57, § III(G)).

## IV.      NOTICE IMPLEMENTATION

Pursuant to the Preliminary Approval Order, the Settlement Administrator implemented the Notice plan. (Dkt. No. 71); *See generally*, Shawver Decl.

Direct notice was achieved through email.  Emails were sent to a broad set of email addresses that users supplied for their Google Plus accounts in the United States.[5]  The email campaign began on August 3, 2020 and continued for a total of five (5) business days, ending on August 7, 2020.  The vast majority of the emails (over 98%) were successfully delivered, with bounce-back rates for undeliverable emails of under 2%. Angeion also created the Settlement Website, which was established on June 24, 2020, and as of October 15, 2020, had received 5,472,651 website visits by 4,482,813 unique users totaling 13,154,947 pageviews. Shawver Decl., ¶ 6. The Settlement Website contained a summary of the Settlement, frequently asked questions,

---

[5] For several reasons, the parties cannot definitively identify which users had accounts affected by the first bug.  In an effort to ensure that as many potential class members as possible received notice of the settlement, the parties agreed to disseminate notice via email to a much larger group of Google+ users than those likely to be class members.  In addition, email addresses do not correspond to individual users on a one-to-one basis, as users may often have multiple email accounts.

1   various Court documents (*e.g.*, the Settlement Agreement, Preliminary Approval Order,

2   Complaints, declarations, exhibits, and other pertinent documents), Long Form Notice, Claim

3   Forms, information on the claim filing/exclusion/objection deadlines, and allowed Settlement

4   Class Members an opportunity to file a Claim Form, Objection, or Opt-Out online through October

5   8, 2020. Angeion also established a toll-free number, 1-833-509-1101, for Settlement Class

6   Members to call and obtain additional information regarding the Settlement through an Interactive

7   Voice Response ("IVR") system and/or by being connected to a live agent. As of October 15,

8   2020, Angeion received 17,221 calls. Shawver Decl., ¶ 7. In sum, the multi-media channel Notice

9   plan developed and deployed for this Settlement was robust and far-reaching, accomplishing the

10  requirements of Due Process. Shawver Decl., ¶ 5.

11  **V.    CLASS REACTION**

12          The Settlement Class' response to the Settlement has been positive and engaged. As of

13  October 15, 2020, approximately 1,820,549 claims have been filed, Shawver Decl., ¶ 10, far

14  outpacing the claims totals seen in *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal.

15  2015) (of 798,000 class members, 47,336 had submitted claims, amounting to an approximate

16  5.9% claims rate), and *In Re Anthem*, 327 F.R.D. 299, 320–21 (N.D. Cal. 2018) (of 79.15 million

17  class members, total of 1.41 million total claims were filed, amounting to an approximate 1.8%

18  claims rate), and received approximately 761 objections—which substantially consisted of images

19  submitted without any substance or noted objection, failing to satisfy Rule 23(e), as well as

20  numerous duplicates, bringing the total number of objections down.  Shawver Decl., ¶ 9.  Further,

21  as of October 15, 2020, 49,749 opt-outs were received. Shawver Decl., ¶¶ 8. This represents a

22  miniscule objection rate of 0.04% and an opt-out rate of 2.7% of participating Class Members,

23  further supporting approval of the Settlement. *See, e.g.*, *In re Anthem*, 327 F.R.D. at 320–21 ("low

24  rates of objections and opt-outs are 'indicia of the approval of the class.'") (citations omitted)

25  (quoting *Hughes v. Microsoft Corp.*, No. 98-cv-01646, 2001 WL 34089697, at *1, *8 (W.D. Wash.

26  Mar. 26, 2001)).

27  **VI.    ARGUMENT**

28          **A.    The Settlement Class Should Be Finally Certified**

MEMO ISO PLTFS' MOTION FOR FINAL APPROVAL OF SETTLMENT
CASE NO: 5:18-CV-06164-EJD                                                                    - 8 -

1    Before assessing the parties' settlement, the Court should first confirm the underlying

2    settlement class meets the requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S.

3    591, 620 (1997); Manual for Complex Litigation, § 21.632. The requirements are well known:

4    numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P.

5    23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

### 1.    The Rule 23(a) Requirements Are Met

7    The Settlement Class is estimated to potentially include up to approximately ten million

8    United States-based accounts, and so readily satisfies the numerosity requirement. *See* Fed. R. Civ.

9    P. 23(a)(1). The commonality requirement, which requires that class members' claims "depend

10   upon a common contention" of such a nature that "determination of its truth or falsity will resolve

11   an issue that is central to the validity of each [claim] in one stroke," is also met. *Wal-Mart Stores,*

12   *Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, Plaintiffs' claims turn on whether Google's security

13   environment was adequate to protect Settlement Class Members' Personal Information. The

14   resolution of that inquiry revolves around evidence that does not vary from class member to class

15   member, and so can be fairly resolved—whether through litigation or settlement—for all class

16   members at once.

17   Likewise, typicality and adequacy are easily met. Each proposed Settlement Class

18   Representative alleges he or she was a Google+ user with Personal Information stored on Google's

19   servers that was exposed to unauthorized third parties during the Data Leaks; Plaintiffs were thus

20   impacted by the same inadequate data security that they allege harmed the rest of the Class. *Just*

21   *Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the

22   plaintiff endured a course of conduct directed against the class."). The Settlement Class

23   Representatives also have no conflicts with the Settlement Class; have participated actively in the

24   case, including thorough examination of their Google+ profiles to identify the personal and private

25   nature of the Personal Information stored therein; and are represented by experienced attorneys

26   who were previously appointed by this Court to represent Class Members' interests. (Dkt. No. 44);

27   *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (adequacy satisfied if plaintiffs and their

28   counsel lack conflicts of interest and are willing to prosecute the action vigorously on behalf of

1    the class); (Dkt. No. 57-5, ¶¶ 25, 27).

2                **2.       The Requirements of Rule 23(b) Are Met**

3            "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

4    certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or

5    (3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, the Settlement Class

6    is maintainable under Rule 23(b)(3), as common questions predominate over any questions

7    affecting only individual members and class resolution is superior to other available methods for

8    a fair and efficient resolution of the controversy. *Id*. Plaintiffs' claims depend, first and foremost,

9    on whether Google used reasonable data security to protect consumers' Personal Information

10   stored in Google+ user profiles. That question can be resolved using the same evidence for all

11   Settlement Class Members, and thus is precisely the type of predominant question that makes a

12   class-wide adjudication worthwhile. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045

13   (2016) ("When 'one or more of the central issues in the action are common to the class and can be

14   said to predominate, the action may be considered proper under Rule 23(b)(3) ….'") (citation

15   omitted).

16           Importantly, predominance analysis in the settlement context need not consider

17   manageability issues because "the proposal is that there be no trial," and hence manageability

18   considerations are no hurdle to certification for purposes of settlement. *Amchem*, 521 U.S. at 620.

19   There is only the predominant issue of whether Google failed to properly secure the Personal

20   Information disclosed to unauthorized third parties during the Data Leaks and failed to provide

21   timely notice, such that its users should now be provided a remedy. Resolution of that issue through

22   individual actions is impracticable: the amount in dispute for individual class members is too small,

23   the technical issues involved are too complex, and the required expert testimony and document

24   review too costly. *See Just Film*, 847 F.3d at 1123. Rather, the class device is the superior method

25   of adjudicating consumer claims arising from the Data Leaks—just as in other data breach cases

26   where class-wide settlements have been approved. *See, e.g.*, *In re Yahoo! Inc. Cust. Data Sec.*

27   *Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019); *Parsons v. Kimpton Hotel &*

28   *Rest. Group, LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc. Data*

*Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015).

**B.     The Settlement Should be Finally Approved**

**1.     Rule 23(e) Analysis**

Amended Rule 23(e) standardizes the factors governing final approval, stating that approval is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

The applicable standard for preliminary approval also now incorporates these factors, which Plaintiffs analyzed at the preliminary-approval stage, including at the hearing on May 21, 2020 (Dkt. No. 71), along with the Northern District of California's Procedural Guidance for Class Action Settlements' multiple applicable criteria for preliminary approval and this Circuit's factors for final approval. (*See* Dkt. No. 57, §§ IV). Accordingly, Plaintiffs incorporate by reference their previously submitted argument and analysis. To avoid further burdening the record, Plaintiffs recap highlights of those arguments below and address any new matters evolving since that filing.

As previously established, Plaintiffs as appointed representatives for the class and Class Counsel have adequately represented the Class. (Dkt. Nos. 57, § IV(F); 71, ¶ 8). The Settlement was negotiated at arm's length using an experienced neutral. (Dkt. No. 57, §§ II(F), IV(B)(9)).

1

a.      **Adequacy of Relief: Costs, Risks, and Delay**

2        The relief provided by the Settlement is reasonable and adequate, particularly in light of

3  the risks and delays trial and associated appeals would wreak. Although Plaintiffs maintain they

4  had a strong case for liability, the primary issue and risk was the viability of Plaintiffs' damages

5  models and ability to certify a damages class using them. While data breaches generally involve

6  the pilfering of types of data that are both known and uniform across a class, such uniformity was

7  not present in this case.

8        This case did not involve a traditional data breach; instead, as described above, the Data

9  Leaks concerned information *potentially* being shared with third-party application developers. Put

10  differently, Plaintiffs and Class Members could have shared this information with those third-party

11  application developers by making a simple selection in the Google+ platform. The information at

12  issue was not stolen by hackers or otherwise leaked to the Dark Web, it was potentially shared

13  with third-party application developers already integrated into the Google+ platform.

14        Google rigorously disputed whether harm and damages was pleaded and challenged the

15  entirety of Plaintiffs' consolidated complaint. While Plaintiffs maintain that liability is strong, the

16  road to certifying a damages class based on a licensing model remains uncertain in data breach

17  litigation. Therefore, taking these factors into account, the Settlement provides a fair and just

18  mechanism for relief to the Class. It is certain and provides monetary and non-monetary

19  compensation.

20        Although claims have not yet been administered, it is estimated class members will recover

21  monetary relief squarely within the range Plaintiffs' expert Mr. Ian Ratner calculated for the

22  information potentially at issue in this Settlement. As was stated in Plaintiffs' motion for

23  preliminary approval, Mr. Ratner determined the range of transaction values for access to social

24  media accounts between $0.20 and $29.60, with an average of $2.50 per account. (Dkt. No. 57,

25  p.14; Dkt. No. 57-5, ¶ 31). Claimants will certainly exceed the bottom value of this range and are

26  anticipated to recover more than $2.00 after payment of all notice and administration costs,

27  attorneys' fees, costs, and expenses.

28

### b.    Adequacy of Relief: Proposed Method of Distributing Relief

Relief will be distributed to the Class following submission of claim forms on which Class Members attest under oath to their creation of a Google+ account, entry of private information, and sharing that private information to qualify for monetary benefit. For efficient distribution, Class Members may accept electronic distributions to be made through PayPal or ACH transfers.

### c.    Adequacy of Relief: Attorneys' Fees, Costs, and Expenses

Plaintiffs filed their Motion for Attorneys' Fees, Costs, and Expenses and Service Awards, (Dkt. Nos. 87, 88), seeking these from the Settlement Fund, as further articulated in that motion.

### d.    Rule 23(e)(3) Agreements and Equality of Treatment

No Rule 23(e)(3) agreements are in place in this matter. The Settlement treats Class Members equitably relative to each other. All Class Members are eligible for monetary relief and will equally benefit from Google's removal of the Google+ platform.

### 2.    The District's Procedural Guidance Regarding Final Approval

The Northern District of California's Procedural Guidance for Class Action Settlements directs that, a motion for final approval should include:

> information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who elected to opt out of the class, and the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections.

N.D. Cal., *Procedural Guidance for Class Action Settlements* (Dec. 5, 2018) (hereinafter "District Guidance"). As set forth above, notice was achieved via direct email, with no more than 49,749 requests for exclusion, and no more than 761 objections (of which there are duplicates and other submissions that squarely fail to conform with Rule 23, which Class Counsel will address in its forthcoming response to objections no later than November 5, 2020). The Court has set a deadline of November 5, 2020, to respond to all objections, (Dkt. No. 71, p.10), at which time Plaintiffs will address that factor under this District's Procedural Guidance. Although the Court set a subsequent deadline for the objections, Class Counsel have reviewed the objections filed with the Court and with the Settlement Administrator. The primary bases for objections fall into four

1   categories (but to be sure, there are additional bases for objections): (1) the basis of the lawsuit;

2   (2) amount of relief; (3) the amount of attorneys' fees; and (4) the requirement that Class Members

3   accept payment via PayPal or ACH transfer. These will be addressed in greater substance in

4   Plaintiffs' forthcoming responses, which will be filed on or before November 5, 2020, (Dkt. No.

5   71, p.10); however, and by way of preview, Plaintiffs preliminarily address the objections by

6   category as follows:

7          Basis of the Lawsuit:

8          Class Members lodged objections to the foundation of this lawsuit insomuch as Google has

9   no culpability and Class Members suffered no harms. Assuming, *arguendo*, this is true, then the

10  objections are without merit—Google has offered what amounts to buying global peace with the

11  Settlement Class. As with other categories of objections, these objectors were well within their

12  rights to opt-out of the Settlement and not collect the monetary relief Google offers.

13         Amount of Relief:

14         In sum, these objections argue, in conclusory fashion, that the amount of relief is too little

15  to compensate class members based on Google's market capitalization worth. These conclusory,

16  bare assertions fail to meet the burden of demonstrating why the settlement is unfair or

17  unreasonable. *See, e.g.*, *Hanlon*, 150 F.3d at 1027; *In re Google Referrer Header Privacy Litig.*,

18  87 F. Supp. 3d 1122, 1137 (N.D. Cal. 2015) (holding that the parties themselves, as opposed to the

19  court or objectors, are in the best position to assess whether a settlement "fairly reflects" their

20  "expected outcome in litigation" and that "just because a settlement could be improved does not

21  mean it is not fair, reasonable or adequate."), *vacated on other grounds*, *Frank v. Gaos*, 139 S. Ct.

22  1041 (2019); *Schechter v. Crown Life Ins. Co.*, 2014 WL 2094323, **2–3 (C.D. Cal. May 19,

23  2014) (recognizing that settlements may be less than what could be achieved at trial, and an

24  objector must "demonstrate, if he can, that the settlement is so far out of the ballpark" as to be

25  inconsistent with the objectives of litigation). Absent the Settlement, Class Members could have

26  no relief at all, but Google's market capitalization has no bearing on the value of the Settlement.

27  *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 628

28  (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the

potential recovery will not per se render the settlement inadequate or unfair. This is particularly true in cases, such as this, where monetary relief is but one form of the relief requested by the plaintiffs.  It is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). These objectors are, of course, free to opt out of the Settlement and pursue individual lawsuits to recover the damages they deem sufficient.

> Amount of Attorneys' Fees:

As Plaintiffs thoroughly explain in their application for an award of attorneys' fees, costs, expenses, and service awards, (Dkt. Nos. 87, 88), Class Counsel's fee request rests squarely within the Ninth Circuit's benchmark for common fund awards in similar cases, representing a 1.85 multiplier for the work required to bring the Settlement to finality—including monetary and non-monetary relief for Class Members. Class Counsel were entitled to pursue more than 25% of the common fund, but instead sought what the Ninth Circuit has deemed reasonable in common fund cases. *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). For the reasons demonstrated in Plaintiffs' request for an award of attorneys' fees, costs, expenses, and service awards, (Dkt. Nos. 87, 88), Class Counsel have met the Ninth Circuit's factors taking into account the results achieved, the risk of litigation, the skill required, the contingent nature of the case, and awards in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

> Requirement of PayPal or ACH Transfer:

Finally, a small number of objections concern the mistaken requirement that Class Members provide Google—instead of the Settlement Administrator—their PayPal or bank information to receive compensation. This is easily rendered: the Settlement Administrator can, and with the Court's approval will, send physical checks to these Class Members.

### 3.    Ninth Circuit Final Approval Factors

Amended Rule 23 and the District Guidance reflect many of the factors already used in this Circuit for final approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout

the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011).  Because only factors (7) and (8) have the potential for evolution since the preliminary approval stage, with all others being previously addressed, they are further detailed below, with Plaintiffs' prior argument incorporated by reference. (Dkt. No. 57, §§ B(1)–(9)).

### a.      The Presence of a Government Participant

Although various investigations by governmental and regulatory authorities were commenced relating to the Data Leaks, Plaintiffs here pursued their claims independently. Pursuant to the Notice Plan, S.A., § 4.4, the Attorney General of the United States, and the 51 Attorneys General as well as to 5 territories were notified pursuant to CAFA, 28 U.S.C. § 1715, and given an opportunity to raise any objections. No such objections were received.

### b.      The Reaction of the Class Members to the Settlement

As described above, the reaction of the Settlement Class has been positive, with more than 1,820,549 claims having been filed, with no more than 49,749 requests for exclusion, and no more than 761 objections. Shawver Decl., ¶ 8–10.

### C.      The Notice Plan Met the Requirements of Due Process

In any proceeding that is to be accorded finality, due process requires that interested parties be provided with notice reasonably calculated, under the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). That means the settlement notices must fairly apprise the class members of the terms of the proposed compromise and give class members sufficient information to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement. *Id*. Additionally, the notice must be designed to have a reasonable chance of reaching a substantial percentage of the class members. *Id*. at 318 (explaining notice must be reasonably calculated to reach interested parties).

1    For classes certified under Rule 23(b)(3), "the court must direct to class members the best

2    notice that is practicable under the circumstances, including individual notice to all members who

3    can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Under amended Rule

4    23(c)(2)(B), "[t]he notice may be by one or more of the following: United States mail, electronic

5    means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (effective Dec. 1, 2018).

6    Here, as explained above, the Notice plan was implemented via direct notice, along with

7    publication notice. Accordingly, the Court should find the Notice Plan was reasonably calculated

8    to give actual notice to Settlement Class Members of the right to receive benefits from the

9    Settlement, and to be excluded from or object to the Settlement, and that the Notice Program

10   therefore met the requirements of Rule 23 and due process.

11   **D.    Final Appointment of Settlement Class Counsel**

12   Under Rule 23(g)(1)(B), "a court that certifies a class must appoint class counsel [who

13   must] fairly and adequately represent the interests of the class." In making this determination,

14   courts generally consider the following attributes: the proposed class counsel's: (1) work in

15   identifying or investigating potential claims; (2) experience in handling class actions or other

16   complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable

17   law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

18   Here, proposed Settlement Class Counsel have extensive experience prosecuting class

19   action cases, and specifically data breach cases, and were previously appointed by this Court. (*See*

20   Dkt. Nos. 27-2, 27-3, 57, 71). Accordingly, the Court should appoint as Class Counsel: John A.

21   Yanchunis and Ryan J. McGee of Morgan & Morgan Complex Litigation Group; Clayeo C.

22   Arnold and Joshua H. Watson of Clayeo C. Arnold Professional Law Corporation, and Franklin

23   D. Azar and Margeaux R. Azar of Franklin D. Azar & Associates.

24   **E.    Cy Pres**

25   The Court appointed former Magistrate Judge Elizabeth LaPorte of JAMS, who reviewed

26   applications from non-profit entities and recommended applicants Stanford Law School's Center

27   for Internet and Society ("CIS") and the Electronic Privacy Information Center ("EPIC") to be

28   selected as Approved Cy Pres Recipients. (Dkt. Nos. 72). To the extent there is any residual

1 | remaining in the Settlement Fund following distributions and covering all costs, CIS and EPIC

2 | will be eligible to share in an equal distribution of the residual.

3 | **VII.    CONCLUSION**

4 |         Plaintiffs respectfully request the Court grant their Motion for Final Approval of

5 | Settlement; find the Settlement and Release are fair, reasonable, and adequate under Rule 23(e);

6 | finally certify the Settlement Class; finally appoint Plaintiffs Matt Matic, Zak Harris, Charles

7 | Olson, and Eileen M. Pienkowski as class representatives for the Class; finally appoint Settlement

8 | Class Counsel; find the Notice plan satisfied Rule 23 and due process; finally appoint Angeion

9 | Group as the Settlement Administrator; and grant any further relief as the Court deems just and

10 | proper.

11 | Dated: October 15, 2020                          Respectfully submitted,

JOHN A. YANCHUNIS (*pro hac vice*)
jyanchunis@forthepeople.com
RYAN J. McGEE (*pro hac vice*)
rmcgee@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone:    (813) 223-5505
Facsimile:    (813) 223-5402

Clayeo C. Arnold, SBN 65070
carnold@justice4you.com
Joshua H. Watson, SBN 238058
jwatson@justice4you.com
**CLAYEO C. ARNOLD**
**A PROFESSIONAL LAW**
**CORPORATION**
865 Howe Avenue
Sacramento, California 95825
Telephone:    (916) 777-7777
Facsimile:    (916) 924-1829

FRANKLIN D. AZAR (*pro hac vice*)
azarf@fdazar.com
MARGEAUX R. AZAR (*pro hac vice*)
azarm@fdazar.com
**FRANKLIN D. AZAR & ASSOCIATES,**
**P.C.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14426 East Evans Avenue
Aurora, Colorado 80014
Telephone:     (303) 757-3300
Facsimile:     (720) 213-5131

*Appointed Class Counsel*

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on October 15, 2020, I authorized the electronic filing of the foregoing

3

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

4

to the e-mail addresses denoted on the attached Electronic Mail Notice List.

5

I certify under penalty of perjury under the laws of the United States of America that the

6

foregoing is true and correct.

7

Executed on October 15, 2020.

8

*/s/ John A. Yanchunis*
John A. Yanchunis

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28