**EDWARD W. ORR**
122 Ridge Road
Terryville, CT 06786

RECEIVED
AUG 1 9 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

**Sent via Certified Mail:**
**7015 3010 0000 4384 3335**

September 19, 2020

Google Plus Data Litigation
Attn: Settlement Objections
P.O. Box 58220
Philadelphia, PA, 19102

**SUBJECT:** In re Google Plus Profile Litigation, Case No. 5:18-cv-06164-EJD

**OBJECTION**[1] of Edward W. Orr; 122 Ridge Road; Terryville, CT 06786 [Telephone: 203-658-4977] [Email eanddorr2@gmail.com][2]

---

[1] The Objector is not represented by counsel.

[2] Pursuant to the instructions (please see pertinent sections below) provided in the official Notice, please note that certain prefatory information is provided in the beginning portions of this document:

1. *If you are a Settlement Class Member and do not opt out of the Settlement Class, you may object to any aspect of the Settlement. This includes commenting on the applications for Class Representative Service Awards or the award of attorneys' fees, costs, and expenses. Your completed Objection must be submitted no later than October 8, 2020 online here or via postal mail to the following address:*

(This Objection applies not only to the Objector, but also to all others similarly affected.

By signing below and submitting this Objection, I hereby affirm under oath that: (1) I am 18 years of age or older; (2) I am the person identified above; and (3) the information provided is, to the best of my knowledge, true and correct.

Objector Orr intends to appear at the Final Fairness Hearing, and respectfully requests to be heard.

The grounds for Objection are stated with specificity below.)

---

*Google Plus Data Litigation*
*Attn: Settlement Objections*
*P.O. Box 58220*
*Philadelphia, PA, 19102*

Any Objection must be in writing and must:

    a. *Clearly identify the case name and number, In re Google Plus Profile Litigation, Case No. 5:18-cv-06164-EJD;*

    b. *Include the full name, address, telephone number, and email address of the person objecting;*

    c. *Include the full name, address, telephone number, and email address of the Objector's counsel (if the Objector is represented by counsel);*

    d. *State whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class, and also state with specificity the grounds for the Objection; and*

    e. *Be verified by an accompanying declaration submitted under penalty of perjury or a sworn affidavit....*

*... any Settlement Class Member who timely submits an Objection has the option to appear and request to be heard at the Final Fairness Hearing, either in person or through their counsel....*

\* \* \* \* \* \* \* \* \* \*

\* \* \* \* \* \* \* \* \* \*

Dear Sir or Madam:

1. My name is Edward Orr, and in <u>ORR, ET AL V. INTERCONTINENTAL HOTELS GROUP, PLC</u>, I was an individual who suffered data losses related to Google+.

2. The Google+-related data losses went <u>beyond</u> parameters included in the so-called "Google Plus Profile Field List Parameters."

3. This means, therefore, that there has been insufficient discovery in the instant suit (<u>IN RE GOOGLE PLUS PROFILE LITIGATION, CASE NO. 5:18-CV-06164-EJD</u>).

4. There has been improper ascertainment of just how broadly – and how severely – Google+ users have been harmed by the Google+ software bugs, because – according to the erroneous Notice in this suit, supposedly nothing beyond the aforementioned "Google Plus Profile Field List Parameters" should have been affected.

5. Accordingly, the proposed settlement in the instant suit (<u>IN RE GOOGLE PLUS PROFILE LITIGATION, CASE NO. 5:18-CV-06164-EJD</u>) should not be approved.

6. There are facts in dispute over which there has been insufficient inquiry.

7. Furthermore, there is copious Ninth Circuit case law which states, in no uncertain words whatsoever, that the Objector does not have the burden of proof, and the appeals courts say the same thing, with one of numerous examples shown below:

> We have remanded class action settlements if the record reveals no inquiry into the facts in dispute. *See Ficalora v. Lockheed Calif. Co.,* <u>751 F.2d 995</u>, 996 (9th Cir.1985).

> <u>UNITED STATES V. STATE OF OREGON</u>, *913 F.2d 576* (9th Cir. *1990*).

8. In a precedential Ninth Circuit case, a woman by the name of Rosemary Ficalora objected.

9. <u>Was it her fault that there had been no – and/or insufficient – inquiry? No. Absolutely not</u>.

10. Would it have been fair to her to make her present evidence that could only have been gained via discovery that should have been conducted in an earlier phase? No. Absolutely not.

11. Because of her objection, the Appellate Court remanded.

12. Ficalora v. Lockheed Calif. Co., 751 F.2d 995 (9th Cir.1985) states the following:

> The primary purpose of Rule 23(e) is to protect class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties. *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 624 (9th Cir.1982), *cert. denied*, 459 U.S. 1217, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983).

> In reaching a compromise in settlement of a class action, the attorney representing the plaintiff class is placed in a particularly difficult position because he or she bears responsibility both toward the class as a whole and toward individual class members. *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 834-35 (9th Cir.1976).

> The attorney also can be forced into a situation in which his or her own fee can be enlarged or reduced by concessions made by the class or by members of the class in order to achieve settlement.

> Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned parties. *Officers for Justice,* 688 F.2d at 625.

> ...While this court should not lightly disturb a district court's approval of a class action settlement, *Mendoza v. United States,* 623 F.2d 1338, 1344-45 (9th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981), the district court record reveals no inquiry by the court into the questioned activities of plaintiff class counsel with respect to the named plaintiff, Ficalora.

> ... On remand, the district court should determine the amount of attorney's fees received by plaintiff-class counsel and whether the early closing of the case by settlement sacrificed any interest of the named plaintiff.

> The court should then consider Ficalora's objections in detail...

> Vacated and remanded.

13. Accordingly, the proposed settlement in the instant suit (IN RE GOOGLE PLUS PROFILE LITIGATION, CASE NO. 5:18-CV-06164-EJD) should not be approved.

14. Both case law and Newberg & Conte support the above conclusion:

A presumption of fairness exists where:

(1) the settlement is reached through arm's-length bargaining;

(2) **investigation and discovery are sufficient to allow counsel and the court to act intelligently;**

(3) counsel is experienced in similar litigation; and

(4) the percentage of objectors is small.

(Newberg & Conte, Newberg on Class Actions, § 11.41, pp. 11-91.)

15. Newberg above accurately interprets Rule 23's definition of fairness, including especially Rule 23(a)(1), concerning "questions of law or fact common to the class," a subsection which obviously includes discovery issues precisely like the one described here.

16. Insufficient discovery has occurred in this case.

17. This is not fair, and one must not turn a blind eye to such an omission.

18. It was the responsibility of Class Counsel to have conducted adequate discovery.

19. The burden never shifts to the Objector until <u>AFTER</u> there has been sufficient discovery to enable counsel to act intelligently.

20. The settlement is unfair, and is the product of an unintelligent analysis.

21. The fault rests squarely on Class Counsel's shoulders.

22. It's all in the Ninth Circuit case law, but perhaps a more concise and/or eloquent expression of the very same point is shown below, in an excerpt from a New York case:

> This Court stated in *In re Baldwin-United Corp. (Single Premium Deferred Annuities Insurance Litigation)*, 607 F. Supp. 1312 (S.D.N.Y.1985):
>
> [B]ecause of the strong policy in favor of settlements, the evidence heard by the court must be weighed according to <u>**a burden of proof which shifts to the objecting class members once the proponents have met their initial burden**</u> of proving "that the settlement was reached as

a result of arm's length negotiations, that the proponents are represented by counsel experienced in similar cases, that there has been sufficient discovery to enable counsel to act intelligently, and that the number of objectants or the relative size of their interests is small." Id. at 1320 (citations omitted)

In Re Union Carbide Corp. Securities Litigation, 718 F. Supp. 1099 (S.D.N.Y. 1989); US District Court for the Southern District of New York- 718 F. Supp. 1099 (S.D.N.Y. 1989) July 13, 1989 (Underlining and emphasis supplied)

23. The fault rests squarely on Class Counsel's shoulders.

24. Attached exhibits include the following:

Exhibit "A" (printout/list [not all-inclusive] of various emails sent from Google+ to Orr);

Exhibit "B" (screenshot /list [not all-inclusive] of various emails sent from Google+ to Orr);

Exhibit "C" (indication of 1,700-plus emails [not all-inclusive] containing mention, utilization and/or link to Google+);

Exhibit "D" (Gmail/printout/list of emails [not all-inclusive] from Google+ to Orr);

Exhibit "E" (2-1-19 email from Google+ to Orr);

Exhibit "F" (5-16-16 email from Google+ to Orr; IEEE/Institute-of-Electrical-and-Electronics-Engineers link to Hao Gu, Telesforo Aviles, Karim Baratov, Peter Levashov, Thomas Macri, et al);

Exhibit "G" (5-22-16 email from Google+ to Orr; et al);

Exhibit "H" (6-6-16 email from Google+ to Orr);

Exhibit "I" (5-12-17 email from Google+ to Orr);

Exhibit "J" (2-11-17 email from Google+ to Orr);

Exhibit "K" (1-27-17 email from Google+ to Orr);

Exhibit "L" (1-9-17 email from Google+ to Orr);

Exhibit "M" (12-17-16 email from Google+ to Orr);

Exhibit "N" (12-3-16 email from Google+ to Orr);

Exhibit "O" (11-17-16 email from Google+ to Orr);

Exhibit "P" (screenshot of subject "Google +");

Exhibit "Q" (Additional error committed by Google+ in regard to referral to an incorrect, inappropriate, and/or inactive link and/or related in regard to the class-action suit, etc.);

Exhibit "R" ("Alleged Privacy Law Violations Create Potential $5 Billion Issue for Google" / article by Brian Lam, National Law Review);

Exhibit "S" (Brown et al v. Google LLC et al 5:2020cv03664 [see also Exhibit "R"; includes wiretap violations, etc.]);

Exhibit "T" (IN RE GOOGLE, INC. PRIVACY POLICY LITIGATION/p 28 – 31 of Document 50 in Case5:12-cv-01382-PSG, with an important excerpt from page 28 as follows:

> "The thirty-six Attorneys General who on February 22, 2012 sent a letter to Google, opposing implementation of its new privacy policy, exposed Google's disingenuousness:…
>
> …Thus, Google's increased optimization comes at a significant cost to privacy and consumers' rights. What a consumer may discuss with friends on Gmail may be different than that which he or she would search on a computer at work.

> By commingling data (including searches, locations, and email contacts), and tying it to a specific Gmail account **or Google+ account** (and therefore a specific consumer), the consumer's personal information is no longer tied to the account; it is tied to an overarching profile in that person's name, that is regularly supplemented through use of or interaction with Google products. That person no longer remains anonymous where he or she intended to remain anonymous.
>
> The various portions of each person's life are no longer separate and treated in accordance with the expectation of privacy associated with each of them; they are no longer pieces to an impossible puzzle; they are pieces that can be, and as of March 1, 2012 have been, linked to create a clear picture of that consumer.
>
> The fact that this is achieved through independent third-party entities, the identities of which remain undisclosed, is immensely troubling.");

Exhibit "U" ("A New Google+ Blunder Exposed Data from 52.5 Million Users");

Exhibit "V" (EMAILS AND OTHER INFO ACCESSED);

GERMAN LANGUAGE ARTICLE:

"MILLIONEN GMAIL NUTZER BETROFFEN; EXTERNE APP-ENTWICKLER KOENNTEN E-MAILS MITLESEN");

Exhibit "W" (<u>GOOGLE+ HID DATA BREACH PROBLEMS</u>);

GERMAN LANGUAGE ARTICLE:

"GOOGLE SCHWIEG HALBES JAHR UEBER DATENPANNE BEI GOOGLE PLUS");

Exhibit "X" ("Many receiving settlement notices for Google+ class-action lawsuit");

Exhibit "Y" (ORR'S CLAIM ID GGL1376129, WITH CONFIRMATION CODE 00740549, SUBMITTED ON OR ABOUT AUGUST 8, 2020);

Exhibit "Z" (WEBSITE WOULD NOT ACCEPT OBJECTION; PRINTOUT SHOWING MALFUNCTION OF WEBSITE'S ASKING FOR A FILE EVEN AFTER THE WEBSITE ITSELF SHOWS THAT A FILE HAS BEEN UPLOADED !)

[Please note that absolutely <u>no reply has ever been received</u> from the Settlement Administrator; SEE, IN A SUBSEQUENT EXHIBIT, THE TWO EMAILS SENT BY THE CLAIMANT TO THE SETTLEMENT ADMINISTRATOR]);

Exhibit "AA" (TWO EMAILS, to Settlement Administrator about multiple problems: (1) the malfunctioning website's not accepting an objection, and (2) the Settlement Administrator's phone system not accepting a phone message);

[Please note that absolutely <u>no reply has ever been received</u> from the Settlement Administrator];

Exhibit "BB" (1-14-18 LETTER TO UNIVERSITY OF CHICAGO MEDICAL CENTER ABOUT <u>GOOGLE-PLUS INTER-LINKED MEDICAL DATA</u> AND/OR RECORDS, ETC.;

ALSO, SEE MENTION OF PROBLEMS/ISSUES WITH "DE-IDENTIFICATION," ETC.);

Exhibit "CC" (<u>Dinerstein v. Google LLC</u> (Amended CAC, etc.); and interrelated Google/Google+ data problems and files, etc.);

Exhibit "DD" (Interim Documents # 65 and # 85 in <u>Dinerstein</u>, and/or related cases);

Exhibit "EE" (State's Status Report in <u>State of Arizona, ex rel. MARK BRNOVICH, Attorney General v. GOOGLE LLC</u>);

Exhibit "FF" ([5-27-2020; **REGARDING GOOGLE'S DECEPTIVE AND UNFAIR BUSINESS PRACTICES IN OBTAINING INFORMATION ABOUT ITS USERS**] The State's "COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF," in <u>State of Arizona, *ex rel.* MARK BRNOVICH, Attorney General v. GOOGLE LLC</u>);

Exhibit "GG" (Attorney General [Arizona]; 8-21-18 letter regarding certain Google infractions, etc.);

Exhibit "HH" (7-23-2020; Harvard Business School [Zuboff], et al as signatories, in special request to the Court regarding Google's infractions; Re: <u>State v. Google</u>);

Exhibit "II" ("Ten Questions the SEC Will Probably Be Asking Google");

Exhibit "JJ" ("**In June 2018, U.S. news outlets reported that white supremacist and white nationalist content "found a home" on social network GOOGLE PLUS, violating the user policy**";[3] [Source: UNITED

---

[3] As Orr was adversely affected by anti-Semitic slurs, threats, and/or related on the Google+ platform, this is quite important.

Additional portions of the SEC excerpt are shown below:

**Report on Content Governance**

**WHEREAS,** shareholders are concerned that Alphabet's Google is failing to effectively address content governance concerns, posing risks to shareholder value. These concerns extend globally across multiple Google platforms and products.

Google's attempts thus far to address content governance have misfired. For example, in October 2017, Google acknowledged its automated system incorrectly flagged Google Docs content as violating its terms of service, blocking user-generated content and inconveniencing users. In June 2018, YouTube apologized for repeatedly filtering or demonetizing content created by LGBTQ users.

Google's YouTube continues to provide a home for extremist content. **In June 2018, U.S. news outlets reported that white supremacist and white nationalist content "found a home" on social network Google Plus, violating the user policy.** [Emphasis and underlining provided] Data & Society research institute says: "The [YouTube] platform, and its parent company, have allowed racist, misogynist, and harassing content to remain online — and in many cases, to generate advertising revenue — as long as it does not explicitly include slurs." The Network Contagion Research Institute, a group tracking the spread of hate speech, found that the man charged in a mass shooting at a Pittsburgh synagogue linked to racist and antisemitic YouTube videos 71 times.

In December 2018, the *Washington Post* reported: "A year after YouTube's chief executive promised to curb 'problematic' videos, it continues to harbor and even recommend hateful, conspiratorial videos, allowing racists, anti-Semites and proponents of other extremist views to use the platform as an online library for spreading their ideas.... The struggle to control the spread of such content poses ethical and political challenges to YouTube and its embattled parent company, Google."

These controversies have drawn regulatory scrutiny. The European Union, for example, announced measures intended to pressure Google and other companies to combat disinformation ahead of EU parliament elections in May 2019. Security Commissioner Julian King said: "No excuses, no more foot dragging, because the risks are real.... They've got to get serious about this stuff." CEO Sundar Pichai was summoned to Congress to respond to questions about the spread of conspiracy theories on YouTube, during which he said: "We are constantly undertaking efforts to deal with misinformation ... we are looking to do more ... it's an area we acknowledge there's more work to be done." Shareholders are concerned that Google's inability to address these issues proactively poses substantial regulatory, legal, and reputational risks to long-term value.

**RESOLVED:** Shareholders request Alphabet Inc. issue a report to shareholders at reasonable cost, omitting proprietary or legally privileged information, reviewing the efficacy of its enforcement of Google's terms of service related to content policies and assessing the risks posed by content management controversies related to election interference, freedom of expression, and the spread of hate speech, to the company's finances, operations, and reputation.

**SUPPORTING STATEMENT:** Proponents recommend the report include assessment of the scope of platform abuses and address related ethical concerns.

STATES SECURITIES AND EXCHANGE COMMISSION; Google Proxy Statement 2019; SCHEDULE 14A;https://www.sec.gov/Archives/edgar/data/1652044/000130817919000205/lgoog2019_def14a.htm#toc as accessed on 8-20-2020).

**Alphabet Opposing Statement**

Google was founded with the mission to "organize the world's information and make it universally accessible and useful." We strongly believe that the abuse of our platforms to spread extremist content and disinformation is antithetical to that mission, and that we have a responsibility to prevent such abuses. We have undertaken substantial efforts to prevent the manipulation and abuse of our platforms and have, in many instances, reported these efforts publicly.

To combat violent or extremist content on our platform, we use a combination of human reviewers and cutting-edge machine learning, which has amplified our ability to identify and respond rapidly. Once potentially problematic content is flagged by our automated systems, human review verifies whether it violates our policies. If it does, the content is removed, and is used to train our machines for better detection in the future.

While our systems do classify content incorrectly, we are constantly working to improve in this area and to fix mistakes, and have made tremendous progress in recent years.

For example, with respect to the automated systems that detect extremist content, our teams have manually reviewed over two million videos to provide large volumes of training examples, which help improve the machine learning flagging technology.

Notably, machine learning now helps us take down extremist content before it has been widely viewed: well over 90% of the videos uploaded in September 2018 and removed for Violent Extremism had fewer than 10 views. Further, in Q4 of 2018, we removed 49,618 videos that violated our policies against violent extremism. We have published detailed descriptions of our efforts to combat violent extremism on YouTube in our YouTube Community Guidelines....

[Source: UNITED STATES SECURITIES AND EXCHANGE COMMISSION; Google Proxy Statement 2019; SCHEDULE 14A; https://www.sec.gov/Archives/edgar/data/1652044/000130817919000205/lgoog2019_def14a.htm#toc as accessed on 8-20-2020; see also Exhibit "JJ"]

Google Plus Data Litigation
Attn: Settlement Objections
September 19, 2020
Page 18 of 20

Exhibit "KK" (ORR, ET AL V. INTERCONTINENTAL HOTELS GROUP, PLC, ET AL; Various Exhibits in Regard to Google-Plus-Related Security Breach, etc.; Time spent with additional security-related documentation in regard to Certified Mail, FedEx, and/or related documentation as referenced in the attachment entitled "Security Breach Related to Crowne Plaza Pittsburgh West - Green Tree; Hao Gu, T Aviles, Google-Plus, etc.");

Exhibit "LL" (ORR, ET AL V. INTERCONTINENTAL HOTELS GROUP, PLC, ET AL; Claim Details, etc.);

Exhibit "MM" (ORR, ET AL V. INTERCONTINENTAL HOTELS GROUP, PLC, ET AL; Acceptance of Claim, etc.");

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

As mentioned above, please note that the undersigned intends to appear at the Final Fairness Hearing, and respectfully requests permission from the Court to speak and/or communicate.


Sincerely,

*[signature: Edward M Orr]*

Edward W. Orr

Page 18 of 20

Google Plus Data Litigation
Attn: Settlement Objections
September 19, 2020
Page 19 of 20

CRS/DDO:fw72693137519

Enc.: As described and/or referenced herein

cc:    S. Solender (prm)
       S. Specter (prm)
       S. Winick (prm)
       J. White (prm)
       R. Palmer (prm)
       Reliance Standard (prm)
       General Accident (prm)
       Zurich, Int./MR (prm)
       Simplex/MR (prm)
       Social Security Administration (prm)
       Harvard Medical School/EW (prm)
       Yale Medical School/DK (prm)
       University of Chicago Medical Center/SB (prm)
       University of Conn. Medical School/J.Cannon Ref. EWO/3063(prm)
       The Hartford/BC (prm)
       SF/DC Trust (prm)
       DC File/351292381033f/re (prm)
       ATSDR/PA (prm)
       SBI/DC Trust (prm)[23]

---

[23] Note: The undersigned also hereby states that, as a result of the State of National Emergency and/or related, Orr has prepared and proofread this Objection to the best of his ability (owing to the physical handicaps of the undersigned, several friends and family members have assisted and/or acted in agency as required in the preparation of this document, with such disability-related assistance including the assistance of one or more persons holding power of attorney, persons who have also assisted with voice machinery/substitution and/or related, and who may also do so in the future if necessary) under the constraints at hand, including, but not limited to, time constraints, et al. It is hoped that all page references and related are correct, and the undersigned has proofread this document (referring here to the Orr Objection) a minimum of four times, with multiple reviewers/proofreaders assisting. The undersigned has submitted this document in good faith. The attached USB drive contains items in addition to those submitted in hard copy format. Please note that in regard to the settlement website(s) and/or related, non-compliance issues on the part of the website were sometimes so egregious that attempts to utilize ADA-compliant and/or related software sometimes resulted in the unfortunate (but not unexpected, given the website's inappropriate design) compromise of data-screen integrity, etc., thereby exacerbating matters by then concomitantly compromising additional factors (including, but not limited to, compromises of security and/or related, with one or more examples [including, but not limited to, multiple compromised/ accessed/entered and/or related files thereof; per the DOJ, the drive also contains related case submissions, as these are pertinent/interlinked public-access available files and Google-case-related] shown in one or more exhibits; please note that the attached drive is considered part of Exhibits "G," "CC," et al). The undersigned also hereby states that, as a result of the State of National Emergency (and/or concomitant events), Orr has prepared and proofread this Objection to the best of his ability (owing to the physical handicaps of the undersigned, several friends and family members have assisted and/or acted in agency as required in the preparation of this document, with such disability-

Page 19 of 20

related assistance including the assistance of one or more persons holding power of attorney, persons who have also assisted with voice machinery/substitution and/or related, and who may also do so in the future if necessary; It is hoped that all page references and related herein are correct, and the undersigned has proofread this document (referring here to the Orr Objection) a minimum of four times, with multiple reviewers/ proofreaders assisting. The undersigned has submitted this document in good faith.